2002-NMCA-038

43 P.3d 1078

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Daryl Sydney HICKS, Defendant–
Appellant.**

**No. 21,834.**

Court of Appeals of New Mexico.

Feb. 7, 2002.

Certiorari Denied, No. 27,390,
April 1, 2002.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BOSSON, Chief Judge.

{1} Under New Mexico's failure to appear statute, a person commits up to a fourth degree felony if, while released pending trial or appeal in a criminal action, he or she "fails to appear before any court … as required." NMSA 1978, § 31-3-9 (1999). Defendant appeals his conviction for failure to appear. We discuss the meaning of the statutory language "fails to appear" when, as a condition of release from jail, Defendant was ordered to post bond by a date certain, but was not actually ordered to appear in person. Because the facts of this case do not fall within the intended scope of the failure to appear statute, we reverse Defendant's conviction.

## BACKGROUND

{2} While driving through Taos, New Mexico, on the evening of March 31, 1998, Defendant was involved in a car accident. He was arrested and charged with great bodily injury by vehicle (driving while intoxicated), in violation of NMSA 1978, Section 66–8–101 (1991). After spending the night in jail, Defendant appeared before the magistrate court the next morning, April 1, 1998. The judge filled out a Release Order and Bond form (Rule 9–303A NMRA 2002 Criminal Form), which was signed by Defendant and provided to him upon his release. On that form, the magistrate judge indicated that a secured bond was set in the amount of $1000, with 10% cash ($100) required to be posted "by 4–1–98." The form was left blank, however, with regard to any order that Defendant appear personally before the court at any particular time.

{3} Conflicting evidence was presented as to the conditions of release. As the magistrate judge recalled, Defendant was released on the condition that he return later in the day with the required $100 and proof of his address and employment. To qualify for a public defender, Defendant was to return completed indigency forms by April 3, 1998. The magistrate judge testified that he believed Defendant was aware of these conditions. The requirement that bond be posted "by 4–1–98" was written in the judge's own handwriting.

{4} Defendant had a different recollection. He believed that he had been given several days in which to find a job and earn the necessary $100. Defendant, who was not from the area, understood that he had until the following Monday, April 6, to post the cash bond. Upon his release from jail, Defendant arranged to do a couple of days of work on the following Monday and Tuesday. He testified that he returned to the courthouse on Monday morning at 8 o'clock to inform the magistrate judge of the work arrangements he had made. He waited until 8:30 a.m. for the magistrate judge, who had still not arrived. Ultimately, Defendant left a note with the magistrate court's secretary, explaining his intentions to post the money. Defendant worked on Monday and Tuesday, April 6–7, earning $120 $130. At the end of his second day of work, Defendant's employer showed him an article on the front page of the local newspaper, which described the accident and indicated that a warrant had issued for Defendant's arrest. In fact, a bench warrant had been issued on April 3, 1998.

{5} Unsettled by the news of his impending arrest, Defendant used his earnings to take a bus out of state. A little over a year later, he was located in Colorado and arrested on the magistrate court's bench warrant. Defendant was extradited to New Mexico to stand trial on the great bodily injury by vehicle charge, after which he was convicted and sentenced to serve four years incarceration, followed by two years parole. We affirmed Defendant's appeal of that conviction in *State v. Hicks*, Ct.App. No. 21,553 (filed July 25, 2001), *cert. quashed*, S.Ct. No. 27,-093, 131 N.M. 606, 41 P.3d 345 (Jan. 24, 2002).

{6} A separate criminal charge was filed against Defendant on April 4, 2000, charging him with the felony offense of failure to appear, contrary to Section 31–3–9(A). Defendant appeals from a jury verdict on that charge.

## DISCUSSION

### The Meaning of "Failure to Appear"

{7} The State argues that, when Defendant failed to post bond and fled, he committed an act violating the failure to appear statute, as contemplated by Section 31–3–9 (subsequently amended in 1999). The State contends that Defendant knew he was required to appear before the magistrate court to post bond, and committed the crime when he knowingly and willfully "failed to appear," without excuse or justification. As of the date of the underlying vehicular crime, Section 31–3–9 (1973) read, in part: "Any person released pending trial or appeal in any criminal action who willfully fails to appear before any court or judicial officer as required ... is guilty of a fourth degree felony, if he was released in connection with a felony proceeding." *Cf.* § 31–3–9 (1999) (subsequently expanding the offense to include failure to appear at a probation revocation proceeding). The jury was instructed pursuant to UJI 14–

2229 NMRA 1999. The jury instruction stated:

> For you to find [D]efendant guilty of Failure to Appear as required by conditions of release as charged in Count 1, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [Defendant] was released pending trial in a criminal action on the conditions that [Defendant] appear as required by the court.
> 2. [Defendant] failed to appear as required by the court;
> 3. [Defendant's] failure to appear was willful, without sufficient justification or excuse.
> 4. This happened in Taos County, New Mexico, on or about the 1st day of April, 1998.

{8} The State argues that the jury found Defendant's conduct met the essential elements of the crime, including the element that Defendant "was released pending trial" on the condition that he "appear as required by the court." *Id.* After reviewing the arraignment sheet and the Release Order and Bond form, the magistrate judge testified that, to his recollection, Defendant was "required to appear" before the magistrate court by April 1, 1998, to post bond. He did not testify that he had given Defendant a clear verbal order to appear, independent of the requirement that he post bond. The State further argues that, because Defendant had signed the Release Order and Bond form, he knew that he was required to return to the magistrate court to post bond. The State argues that, under the executed Release Order and Bond form, Defendant was required to appear "by 4-1-98" with the money. His failure to do so constituted a failure to appear under the clear and unambiguous language of the statute.

{9} Defendant argues that his failure to post bond does not constitute a failure to appear under Section 31-3-9. Defendant emphasizes that the magistrate judge left blank that portion of the Release Order and Bond form used to establish the time, place, and location of any appearance that would have been required of him. In pre-printed language, the form, partially completed by the magistrate judge, read exactly as follows with blank spaces left incomplete as indicated: "I agree to appear before the court on _____, 19 _____, at _____ located at _____ and thereafter at such times and places required in this case by any court." As previously mentioned, the order form required Defendant to post $100 "by 4-1-98."

{10} Defendant concedes that his failure to post bond may have violated NMSA 1978, Section 31-3-2 (1993), the statute concerning failure to appear as required under recognizance or bail bond. However, Defendant points out that the exclusive penalty under Section 31-3-2(A) is that the court "may issue a warrant for his arrest" and modify the conditions of release, which in fact occurred in this case. In sum, Defendant takes the position that the only "appearance" actually required by the magistrate court was the appearance of money. Although his failure to post bond did violate his conditions of release, he argues that it did not amount to a felony under Section 31-3-9.

{11} In arguing for the inclusion of this case within the statute, the State asserts that the language of Section 31-3-9 is clear and unambiguous, necessitating only a common sense reading without statutory construction. *See Levario v. Ysidro Villareal Labor Agency,* 120 N.M. 734, 736, 906 P.2d 266, 268 (Ct.App.1995) (stating that, absent a clear and express legislative intention to the contrary, a court should "presume that the legislature intended the ordinary and common meanings of [the] words to apply"); *State v. Richardson,* 113 N.M. 740, 741, 832 P.2d 801, 802 (Ct.App.1992) (stating that a common-sense reading will suffice where language is clear and unambiguous). However, where the language of a statute is ambiguous, courts must resort to statutory construction, to search for and effectuate the legislative intent. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 347–48, 871 P.2d 1352, 1353–54 (1994). The principal command of statutory construction is that the court should determine and effectuate the intent of the legislature. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995)

(stating that main goal of statutory construction is to give effect to legislative intent); *State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994) (same). It is also a principal tenet of criminal jurisprudence that ambiguity in criminal statutes is strictly construed against the State. "It has long been part of the common law that penal statutes are strictly construed against the state, and that [a]ny doubts about the construction of penal statutes must be resolved in favor of lenity." *State v. Sung,* 2000–NMCA–031, ¶ 15, 128 N.M. 786, 999 P.2d 430 (quoting *Santillanes v. State,* 115 N.M. 215, 221, 849 P.2d 358, 364 (1993)) (internal quotation marks omitted).

{12} We cannot agree with the State's characterization of either the statute or the facts. One thing that was "clear" below is just how difficult the trial court found it to discern the legislative intent behind the phrase "to appear." The record indicates the court's reservations about the applicability of Section 31–3–9 to Defendant's conduct. The trial court admitted its misgivings about whether or not the phrase "to appear" would apply to Defendant's conduct. When considering a defense motion for a directed verdict, the court "d[i]dn't know what to make of [the Failure to Appear statute]," finding it "pretty vague" as to what meaning the legislature intended for the phrase "to appear." At trial, the jury also asked for clarification regarding the proper procedure associated with insuring that a defendant understands the conditions of release, such as the requirement that a defendant post bond.

{13} The State, rather creatively, maintains that "it could be argued" that Defendant was, in effect, released on his own recognizance to obtain the $100 for bond money. The State points out that NMSA 1978, Section 31–1–2(G) (1979), defines "recognizance" as "any obligation of record entered into before a court requiring the accused to appear at all appropriate times or forfeit any bail and subject himself to criminal penalty for failure to appear." According to the State, this was an obligation of record entered into before the magistrate court that effectively released Defendant on his own "recognizance," and required him to appear at an appropriate time, "by 4–1–98,"

to post the $100 bond or subject himself to criminal penalty for failure to appear.

{14} We need not decide today whether Section 31–3–9 might be stretched so far. Our job in construing a penal statute is not to conjecture as to what the magistrate judge might have had in mind. As we have said repeatedly, in construing a penal statute we require the legislature to define with clarity the contours of proscribed conduct. *See Sung,* 2000–NMCA–031, ¶ 15, 128 N.M. 786, 999 P.2d 430. In order to invoke penal sanctions under Section 31–3–9, the State and the court must also act with precision. If the magistrate judge wanted to regard this situation as a limited release of Defendant on his own recognizance, it was incumbent on the judge to say so in clear, cogent language. We will not allow the State to put the burden on Defendant to guess at the meaning of its order.

{15} The requirement that a criminal defendant "appear" has usually been set forth by court process, such as notice, summons, or subpoena. *See State v. Easterling,* 89 N.M. 486, 488, 553 P.2d 1293, 1295 (Ct.App.1976) (holding that the defendant's oral promise to appear was insufficient to amount to a "required" appearance within the meaning of the failure to appear statute). The term "to appear" has been consistently understood as coming before the court for a set criminal proceeding, such as a hearing or trial to be held at a specific place and time. *See State v. Solano,* 1999–NMCA–019, ¶ 2, 126 N.M. 662, 974 P.2d 156 (indicating defendant charged with failure to appear at trial); *State v. Peppers,* 110 N.M. 393, 394, 796 P.2d 614, 615 (Ct.App.1990) (affirming conviction where the defendant failed to appear at sentencing hearing); *State v. Aranda,* 94 N.M. 784, 785, 617 P.2d 173, 174 (Ct.App.1980) (affirming conviction where the defendant failed to appear for trial); *see also State v. Foster,* 1998–NMCA–147, ¶ 1, 125 N.M. 830, 965 P.2d 949 (reversing conviction for failure to appear at probation revocation hearing, under former Section 31–3–9). *But see* § 31–3–9 (1999) (as amended to include probation revocation hearings).

{16} Defendant, by contrast, was not given a specific time, date, and location at which he

had to "appear," if he was actually ordered to appear at all. The requirement of posting $100 "by 4–1–98" is not conduct that may reasonably be construed as being embraced by the phrase "to appear before [the] court." Section 31–3–9 (1973). This case simply does not fit within the usual parameters that we have established for the violation of this particular statute.

{17} Although the relevant statutory language varies somewhat from state to state, a number of courts have taken the position that an essential element of the crime of failure to appear is that the defendant be legally required to appear at the time at issue. Karen L. Ellmore, Annotation, *State Statutes Making Default on Bail a Separate Criminal Offense*, 63 A.L.R.4th 1064, § 25[a], at 1131 (1988) (citing *State v. Hoskins*, 35 Conn.Supp. 587, 401 A.2d 619, 624 (1978) (affirming conviction where the defendant failed to appear for trial and stating that an essential part of the crime is that the defendant was legally called under the terms of his bail bond or promise to appear); *Trice v. United States*, 525 A.2d 176, 178–80 (D.C. 1987) (affirming conviction where the defendant failed to appear for a court date, holding that willfullness was properly inferred from the defendant having received written notice, and stating that the defendant must have been required to appear in court on a specified date); *Raymond v. United States*, 396 A.2d 975, 976–77 (D.C.1979) (affirming conviction where the defendant failed to appear at scheduled status hearing, stating that one of the elements of the crime was that the defendant had been required to appear at the time in question, and holding that it was proper to infer the defendant's willfulness from the fact that he had notice of the hearing date); *Abdul–Musawwir v. State*, 483 N.E.2d 464, 466 (Ind.Ct.App.1985) (affirming conviction where the defendant failed to appear for trial date and stating that an element of the crime is that the defendant be required to appear at a specific time and place)).

{18} One court held that, although it might seem appropriate to utilize a bail jumping statute for failure to pay fines, a defendant is not generally required to appear to pay a fine or penalty. *See* Ellmore, *supra*, § 25[b], at 1132 (citing *People v. Sanchez*, 119 Misc.2d 525, 464 N.Y.S.2d 674, 676 (N.Y.Crim.Ct. 1983) (holding that the defendant could not be charged with bail jumping for failing to pay a fine, and emphasizing that an essential element of the crime of failure to appear was that the defendant's personal appearance was actually required in a criminal proceeding)). Another court reversed a bail jumping conviction when the trial court's order specifying the required appearance date was too vague. *See* Ellmore, *supra*, § 25[h], at 1137 (citing *State v. Mouttet*, 372 N.W.2d 121, 123 (S.D. 1985) (holding that the trial court's order violated due process because it was unclear whether or not the defendant was required to appear on the date in question)).

{19} Referring specifically to the failure to appear statute, this Court has previously admonished, as we do again today, that " 'courts will not extend punishment to cases not plainly within the [statutory] language used.' " *Foster*, 1998–NMCA–147, ¶ 10, 125 N.M. 830, 965 P.2d 949 (quoting *State v. Thompson*, 57 N.M. 459, 464, 260 P.2d 370, 373 (1953)). In interpreting this statute, we need not decide today whether the words "to appear" are limited to appearances at formal hearings or trials, as opposed to "appearing" with money to post bond, when so ordered, although the former is the context in which prosecutions largely have arisen under this statute. *See, e.g., Peppers*, 110 N.M. at 394, 796 P.2d at 615; *Aranda*, 94 N.M. at 785, 617 P.2d at 174. We do, however, interpret the statute as requiring, at a minimum, some time, date, and place certain at which the defendant must "appear" in person, whatever the purpose of that appearance may be. Here, that essential element of a required personal appearance is missing.

{20} We agree with Defendant that the executed Release Order and Bond form did not require his appearance in person, as much as it required the "appearance" of his money. Had Defendant timely appeared before the magistrate court without the $100, his appearance would not have satisfied the court order; he would have continued to be in violation of his conditions of release and subject to arrest. *See* § 31–3–2. However, had the required money been posted with the court by someone else, even without Defendant's personal appearance, the magistrate

court's conditions of release would have been satisfied. *See* Rule 9–303(A) (Use Note) (advising that "[a] paid surety may post cash with the court"). Our conclusion is corroborated by the blanks left by the magistrate judge in the spaces which would have directed Defendant to appear at a given time, place and date, if his personal appearance had been required. Thus, the facts as charged and as elicited at trial simply do not constitute a violation of this penal statute when "strictly construed" against the State, and in recognition of the principle of lenity. *See Sung*, 2000–NMCA–031, ¶ 15, 128 N.M. 786, 999 P.2d 430.

{21} Our decision leaves the State with sufficient options to compel compliance with conditions of release. Pursuant to relevant release provisions, if a magistrate court determines that the conditions of release previously imposed are insufficient to assure a defendant's presence during the trial, or to assure that the defendant's conduct will not obstruct the orderly administration of justice, the court may at any time have the defendant arrested to review conditions of release. *See* Rules 6–402, –403 NMRA 2002. The court may impose any authorized conditions of release, either in addition to or in place of previously existing conditions. Rule 6–402. The court may revoke a defendant's release and hold the defendant without bond. Rule 6–403. In the present case, the court also had the authority to hold Defendant in contempt. *See* Rule 6–111 NMRA 2002. Indeed, Defendant's failure to comply with the conditions of his release resulted in his being arrested, extradited, and incarcerated awaiting trial, all as set forth in state law. Thus, nothing we require of the State in this opinion should hinder a magistrate judge from enforcing properly defined orders of release.

**CONCLUSION**

{22} For the foregoing reasons, we reverse Defendant's conviction for failure to appear.

{23} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CYNTHIA A. FRY, Judges.