2003-NMCA-090

73 P.3d 256

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Curtis POWELS, Defendant–Appellee.**

**No. 23,327.**

Court of Appeals of New Mexico.

May 15, 2003.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellant.

John B. Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

*OPINION*

VIGIL, Judge.

{1} Criminal damage to property consists of "intentionally damaging any real or personal property of another without the consent of the owner of the property." NMSA 1978, § 30–15–1 (1963). It is a fourth degree felony when the damage to the property amounts to more than $1000. *Id.* In this case, we address an issue of first impression: whether the statute criminalizes damage to community property one owns as "property of another." The district court concluded it does not and dismissed the indictment with prejudice. We agree and affirm.

*BACKGROUND*

{2} The evidence presented to the grand jury in support of the indictment is very sparse. Detective Garry Garcia testified he was dispatched to the home of Kelly Powels's father where she was visiting. Her husband, Defendant, had come to the house upset because he had not seen her for a couple of days and said, "I know what you're all about." He then walked away from her, took a tire iron out of the car he was driving, and broke all the windows on a 1984 Oldsmobile. The cost to replace the windows was $1153.20. The Oldsmobile was purchased during the marriage, but was registered only in the name of Ms. Powels.

*STANDARD OF REVIEW*

{3} We review questions of statutory interpretations de novo. *In re Gabriel M.,* 2002–NMCA–047, ¶ 10, 132 N.M. 124, 45 P.3d 64.

*DISCUSSION*

{4} The parties agree that the Oldsmobile was community personal property. *See* NMSA 1978, § 40–3–12(A) (1973) ("[p]roperty acquired during marriage either by husband or wife, or both, is presumed to be community property"). Under New Mexico law, Defendant and Ms. Powels *each* had a present, vested, one-half interest in the Oldsmobile. *See Ruggles v. Ruggles,* 116 N.M. 52, 62, 860 P.2d 182, 192 (1993). Moreover, since *Beals v. Ares,* 25 N.M. 459, 492–93, 185 P. 780, 790 (1919), the rule has been well settled in New Mexico that the interest of each spouse in the community property is *equal* with that of the other spouse. While Ms. Powels certainly retained a right to control the Oldsmobile, control is a concept separate from ownership. *See Hickson v. Herrmann,* 77 N.M. 683, 685, 427 P.2d 36, 38 (1967).

{5} The statute requires that the Oldsmobile be "property of another" for the crime of criminal damage to property to be committed. Since the Oldsmobile belonged to Defendant and Ms. Powels equally, the Oldsmobile was not "property of another" as far as Defendant was concerned. Therefore, based upon well-settled concepts of New Mexico community property law, since the Oldsmobile belonged to Defendant and Ms. Powels equally, it was not 'property of another,' and Section 30–15–1 does not reach Defendant's alleged conduct.

{6} We find additional support for our conclusion by examining the history of the statute in the common law. *See Sims v. Sims,* 1996–NMSC–078, ¶¶ 23–24, 122 N.M. 618, 930 P.2d 153 (determining meaning of a statute, courts often construe the language in light of the preexisting common law; court presumes legislature informed about existing common law before statute enacted and did not intend to enact a statute that conflicted with the common law).

{7} In the common law of larceny, where property is owned by co-tenants so that each

is entitled to the possession of the property jointly or in common with the others under principles of property law, one tenant cannot be guilty of larceny when he takes possession of the property, even though he does so with the intent to exclude others from its use and enjoyment. 3 Charles E. Torcia, *Wharton's Criminal Law* § 381, at 457–58 (15th ed.1995). Similarly, each partner to a partnership, as the ultimate owner of an undivided interest in partnership property, has an equal right to possession, and one partner cannot be guilty of larceny when he takes possession of such property. In both cases it is impossible for the actor to take the property "of another" under the common law. *Id.* at 458. Section 30–15–1 is a codification of the common law crime of malicious mischief. At common law, the property injured or destroyed must be the property "of another" for the crime to be committed, 4 Charles E. Torcia, *Wharton's Criminal Law* §§ 469, 474 (15th ed.1996). The common law required the ownership of the property to be set forth in the indictment itself. *Davis v. Commonwealth*, 30 Pa. 421, 421 (Pa.1858).

{8} The meaning of "property of another" has been expanded by statute in other states to include a greater number of owners and possessors than at common law. 3 Torcia, *supra*, at 458–59. There has been no such statutory modification in Section 30–15–1. On the contrary, the statute continues to adhere to the common law concept by requiring that the damage to the property be "without the consent of *the owner* of the property." Section 30–15–1 (emphasis added). It does not include community property owned by both a husband and wife.

■ {9} The State argues that because there is a strong public policy not to foster domestic abuse and because the Family Violence Protection Act, NMSA 1978, § 40–13–2(C)(6) (1995), defines "domestic abuse" in part to mean any incident by a household member against another household member resulting in criminal damage to property, the legislature intended the criminal damage to property statute to include criminal damage to community property by one of the owners of the community property. This argument is flawed.

{10} When the Family Violence Protection Act was first adopted in 1987, the term "domestic abuse" was limited to an incident "resulting in physical harm, bodily injury or assault or a threat causing imminent fear of such harm by any household member." 1987 N.M. Laws ch. 286, § 2. The term "household member" was originally defined to mean "[a] spouse, former spouse, family member, present or former household member or co-parent of a child." *Id.* In 1993, the term "domestic abuse" was expanded to include criminal damage to property and other harms not pertinent here. 1993 N.M. Laws ch. 109, § 1. The definition of "household member" was also expanded to mean "[a] spouse, former spouse, family member, including a relative, child, co-parent of a child or a person with whom the petitioner has had a continuing personal relationship. Cohabitation is not necessary to be deemed a household member for purposes of this section." *Id.* In 1995, the definition of "household member" was again expanded, this time to its present form. 1995 N.M. Laws ch. 23, § 3; NMSA 1978, § 40–13–2(D) (1995). As the expanded definitions make clear, the Family Violence Protection Act was never intended to be limited to incidents between spouses.

{11} In addition, from the time the Family Violence Protection Act was enacted, it required the commission of an act of "domestic abuse." When criminal damage to property was added as an element of "domestic abuse" in 1993, Section 30–15–1 was *not* amended. However, the definition of "household member" *was* amended, meaning "domestic abuse" could be committed in an incident resulting in the criminal damage to the separate property of a spouse or the property owned by a former spouse, or other "family member." When there was a further expansion of what constitutes a "family member" in 1995, Section 30–15–1 still was not changed. Simply stated, the legislature has never made damage to community property which one owns an element of criminal damage to property in Section 30–15–1 although it has had at least three specific opportunities to do so. We agree with the State that public policy abhors domestic abuse. However, it is for the legislature, and not this

Court, to define that public policy in determining prohibited actions and defining crimes through statutes. *State v. Contreras,* 2002–NMCA–031, ¶ 6, 131 N.M. 651, 41 P.3d 919.

{12} It stretches the plain, unambiguous wording of Section 30–15–1 to include community property which a person owns within its parameters. To the extent there is any ambiguity in the statute, we are required to construe that ambiguity strictly against the State, because it is also the common law in New Mexico that penal statutes must be resolved in favor of lenity. *State v. Hicks,* 2002–NMCA–038, ¶ 11, 132 N.M. 68, 43 P.3d 1078. This serves the function of giving clear and unequivocal warning in language that people generally understand concerning actions that expose them to criminal penalties. *See In re Gabriel M.,* 2002–NMCA–047, ¶ 20, 132 N.M. 124, 45 P.3d 64.

{13} Finally, we agree with Defendant that the cases cited by the State in its brief in chief are inapplicable because they are not from community property states or because they rely upon statutory backgrounds and modifications which do not exist in New Mexico.

*CONCLUSION*

{14} We conclude Section 30–15–1 does not include community property owned by an accused within its parameters. We affirm dismissal of the indictment with prejudice on the basis that under the evidence presented to the grand jury, there was no probable cause to charge Defendant with criminal damage to property in violation of Section 30–15–1, as a matter of law. *See* NMSA 1978, § 31–6–10 (1979) (stating that a grand jury must be satisfied from "lawful evidence before it that an offense against the laws has been committed").

{15} **IT IS SO ORDERED.**

I CONCUR: A. JOSEPH ALARID, Judge.

WECHSLER, Chief Judge (specially concurring).

WECHSLER, Chief Judge (specially concurring).

{16} I concur in the result. I write separately to stress an apparent gap in legislative intent.

{17} I believe that the criminal damage to property statute, Section 30–15–1, is ambiguous with regard to community property. It can be read, as the majority does, from the perspective of ownership, such that "property of another" precludes any common ownership interest and "consent of the owner" requires the consent of common owners. It can also be read from the point of view of a victim, such that "property of another" refers to the property interest of the victim and "consent of the owner" refers to the consent of the victim as to the victim's property interest. Our interpretation of the statutory language is a matter of legislative intent. *State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994).

{18} The legislative intent, however, is problematic. The criminal damage to property statute, as the opinion demonstrates, is founded in the common law, and at common law, the crime could not be committed if the perpetrator was one of the owners of the property. We presume the legislature adopted the common law meaning in enacting the statute. 4 Torcia, *supra,* § 475, at 66 (observing that even though the common law concept had been modified by statute, "the essence of the offense remains the same; an injury to or destruction of the property of another").

{19} When it included criminal damage to property as an act of domestic abuse in the Family Violence Protection Act, the legislature indicated a different intent. *See* §§ 40–13–2, 40–13–3. The Family Violence Protection Act is not a criminal statute. It is designed to protect spouses, among others, from acts of domestic abuse. *See id.* It allows a spouse who has been subjected to an incident of domestic abuse to obtain an order of protection against the spouse who caused the incident. *See id.* Although I agree with the majority opinion that the Family Violence Protection Act can be read to exclude the incident in this case from the definition of domestic abuse, I do not believe the legisla-

ture had such intent. We would not construe a statute to achieve an absurd or unreasonable result. *See State v. Wyrostek,* 108 N.M. 140, 142, 767 P.2d 379, 381 (Ct.App.1988). I believe that when the legislature incorporated criminal damage to property into the Family Violence Protection Act, it intended to include an incident such as occurred in this case as an act of domestic violence.

{20} However, the legislature did not accomplish this intent. When it carried over the criminal damage to property statute into the Family Violence Protection Act, it also carried over the legislative intent for enacting the criminal damage to property statute. This original intent, based on the common law, does not include damage to community property within the scope of the crime. *See State v. Cleve,* 1999–NMSC–017, ¶ 15, 127 N.M. 240, 980 P.2d 23 (stating that a statute should be interpreted in accord with how the legislature "understood it at the time it was passed") (internal quotation marks and citation omitted).

{21} As a result, when I look to the legislative intent to construe the criminal damage to property statute, what appears to be the obvious intent of the Family Violence Protection Act does not assist in my inquiry. I therefore agree with the majority to affirm the dismissal of the indictment and suggest that if my reading of the legislative intent is correct, legislative action is necessary. *See* Ariz.Rev.Stat. § 13–1601(4) (1997) (defining property of another as "property in which any person other than the defendant has an interest, including community property and other property in which the defendant also has an interest"); Model Penal Code and Commentaries § 220.3 cmt. 3 (1980) (stating that property of another should be defined "to include property 'in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property [.]' ") (quoting Model Penal Code § 223.0(7)).