This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

**v.**                                                                                  **No. 28,372**

**PAUL BORUNDA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant Paul Borunda was convicted of breaking and entering and misdemeanor criminal damage to property. On appeal, he argues that the district court erred by admitting his ex-girlfriend's statement of the incident; that there was insufficient evidence to support his convictions; and that the testimony of a detective improperly invaded the province of the jury when he testified about Defendant's ex-girlfriend's credibility, constituting plain or fundamental error. We affirm the district court.

**BACKGROUND**

Juliana Antillon, Defendant's ex-girlfriend, called 911 to report that Defendant had thrown an object through the window of the door near the kitchen because she would not let him in. The object, a tow hitch, hit Antillon on the back when it came through the window. Officers Cordova and Valdez responded and talked to Antillon about the incident. The officers asked Antillon to write a statement of what had happened. The statement says:

> My ex-boyfriend was knocking on my bedroom window. He woke up the kids. So I asked him to come to the side of the house. He started calling me names, then he pulled this screen door and got an object and broke the glass through the door and it hit me on [the] back, and then he stuck his hand in and followed me in the bedroom, then I got on the phone and he left.

2

A grand jury indicted Defendant on one count of aggravated battery against a household member (deadly weapon), one count of breaking and entering, and one count of criminal damage to property (under $1000).

Antillon testified that she had two daughters with Defendant and that it had been at least three months since Defendant moved out, but he still had a key to the house. She testified that on the night of the incident she was in bed with her daughters, the television was on, and she heard her dogs barking. She "heard a lot of people outside . . . making a lot of noise because [her] neighbors were . . . having a party next door." She was afraid and got up to make sure her windows and doors were locked, and she saw a shadow outside of the side door where the light was not working. She turned to the side when suddenly an object was thrown through the glass and hit her on the back. She further testified that she did not see who threw the object and saw only a jacket and a black hat or beanie. Although Antillon admitted telling the 911 operator that Defendant was the perpetrator, she testified that she told the responding officers that she "thought it was [her] ex-boyfriend," not that it was him. Antillon further testified that she remembered having two conversations on the phone with Detective Upshaw, but she did not remember making an appointment with him. During one of the conversations, Antillon told Detective Upshaw that she was not sure if the perpetrator was Defendant and that she did not want to press charges.

Antillon further explained during her testimony that she realized her dogs would not bark at Defendant, that Defendant had a key to her house, and that she later discovered the blue jacket she thought Defendant was wearing was actually in her house. She also testified that she was upset with Defendant that night because her brother had seen Defendant with another woman and that she was exaggerating so that the officers would take her seriously. During her testimony, she did not remember telling the officers that she had made eye contact with Defendant before he threw the object, that after breaking the window Defendant opened the door and entered the house, or that she told Defendant to leave numerous times. As to her written statement, Antillon said that she wrote what the officers told her to write.

In a bench conference, the defense objected on hearsay grounds to the State's attempt to introduce Antillon's written statement. The court first indicated that the statement could be read to the jury to impeach Antillon, but could not be introduced as an exhibit. The prosecution, nevertheless, argued that the statement would be admissible as a past-recorded recollection since Antillon said she did not remember. The court agreed but clarified that "to make the prior inconsistent statement admissible as past recorded recollection, would be if she remembers writing that . . . [i]f she says no, I am not going to admit it." Because Antillon remembered writing the statement, the prosecutor moved the admission of the statement into evidence as

4

constituting a prior-recorded recollection, and the court admitted the document into evidence, after which the statement was read to the jury.

Detective Upshaw, with the domestic violence unit, testified that he had been a police officer for sixteen years and testified about his specialized education and experience. Detective Upshaw testified that he received advanced training for domestic violence, is a domestic violence instructor, and is certified as a domestic violence detective. Detective Upshaw called Antillon the morning following the incident. Antillon gave him a brief description of what occurred and identified Defendant as the perpetrator. Detective Upshaw scheduled an appointment for Antillon to make a formal statement later that afternoon. However, Antillon called back around lunch time to cancel the appointment and told Detective Upshaw that Defendant was not the perpetrator and that she did not want to press charges. Detective Upshaw then testified in general terms as to what his experience had been with domestic violence victims recanting their original statement.

Officer Valdez testified that Antillon was outside when he and Officer Cordova arrived and that she "looked kind of sad or distraught," but she was not crying. He observed the broken, shattered window and a tow hitch on the kitchen floor. Officer Valdez also testified that Antillon told him that someone spoke to her at the children's window, that this person banged on that window, that this person threw the object

through the kitchen window and shattered it, and that Antillon knew this person and gave a specific name. What Officer Valdez observed was consistent with what Antillon was saying, and he did not have any reason to disbelieve her.

Before moving the court for a directed verdict, Defendant's counsel asked the court to reconsider its past-recorded recollection ruling by which Antillon's statement was received as an exhibit. In support of this request, defense counsel argued that because she had not had time to look at the rule during the bench conference, she did not point out that while the rule permits the record to be read into evidence, the rule does not allow the document to be admitted as an exhibit unless offered by an adverse party. *See* Rule 11-803(E) NMRA. The court stated that it was satisfied with its ruling but that it would review the rule during a recess to make sure the document itself was admissible and that there was "no question what was in that written statement [was] admissible either to impeach or [as] a prior recollection recorded." After the recess, the court agreed with Defendant and ruled that the statement could be read to the jury but would not allow it to be submitted to the jury as a written exhibit.

Defendant was found guilty of the fourth degree felony breaking and entering and criminal damage to property (under $1000), but the jury hung on the aggravated battery charge. Defendant was sentenced to two years, with ninety days incarceration

and the rest of the sentence suspended, and one year and nine months of supervised probation.  Defendant appeals.

**DISCUSSION**

**Admission of Antillon's Statement**

This Court reviews the admission of evidence under an exception to the hearsay rule to determine whether there has been an abuse of discretion. *State v. McClaugherty*, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (filed 1998) (internal quotation marks and citation omitted). A district court's decision will be upheld if right for any reason. *Scott v. Murphy Corp.*, 79 N.M. 697, 700, 448 P.2d 803, 806 (1968) ("It is hornbook law that the decision of a trial court will be upheld if it is right for any reason.").

The district court ruled that Antillon's statement could be read to the jury on either of two grounds, as a prior-inconsistent statement or as a past-recorded recollection. Defendant argues that the district court erred by allowing Antillon's statement to be read to the jury as a recorded recollection because Antillon denied the accuracy of her statement when she testified that that was not what really happened and that she simply wrote what the officers told her to write. Defendant cites *State v.*

8

*Allison*, 2000-NMSC-027, ¶ 30, 129 N.M. 566, 11 P.3d 141, to support his argument that when a witness denies the information from the record as opposed to not being able to recall the incident, the evidence is inadmissible as a past-recorded recollection. However, Defendant does not assert error with respect to the district court's ruling that the statement could be read to the jury as a prior-inconsistent statement to impeach the witness. A witness may be examined about a prior-inconsistent statement under Rule 11-613(B) NMRA, which states in part:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon[.]

Therefore, we conclude that Defendant has failed to demonstrate that the district court abused its discretion by allowing Antillon's statement to be read to the jury. *See Allison*, 2000-NMSC-027, ¶ 31 (concluding that because the defendant "failed to address all grounds upon which the trial court admitted the evidence," he did not demonstrate an abuse of discretion).

**Sufficiency of the Evidence**

Next, Defendant argues that there was insufficient evidence to support his convictions of breaking and entering and criminal damage to property. "Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect

9

to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted). On appeal, the appellate court views the evidence in the light most favorable to the verdict, resolving all conflicts, and indulging all reasonable inferences in favor of the verdict. *State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). The question is whether the district court's "decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

**Breaking and Entering**

First, Defendant argues that the only evidence showing that he entered the home to commit breaking and entering was Antillon's statement, which could not have been admitted as substantive evidence for the purpose of showing that Defendant entered the house. Defendant cites *State v. Morales*, 2000-NMCA-046, ¶ 16, 129 N.M. 141, 2 P.3d 878, to support the position that a prior-inconsistent statement admitted to impeach the witness is inadmissible as substantive evidence. We note, however, that the proper remedy in situations such as this one is for the defendant to request a limiting instruction. *See* Rule 11-105 NMRA ("When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court,

upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). Having failed to request a limiting instruction, Defendant waived any right to claim error on appeal. *See DeMatteo v. Simon*, 112 N.M. 112, 114, 812 P.2d 361, 363 (Ct. App. 1991) (concluding that because the defendants did not request any limiting instructions when evidence was admissible for one purpose but not for another, they waived any right to complain of the district court's alleged error).

Furthermore, Antillon's statement was not the only evidence before the jury that proved breaking and entering. The district court allowed a portion of the 911 call to be played during the trial as an excited utterance. In the 911 call, Antillon reported that someone just broke her window. The operator then asked Antillon if it was a burglary, to which she replied "No[,] [i]t is my ex-boyfriend the person that I have kids with." The call continued as follows:

Operator:    Okay stay on the line with me okay[?]

[Antillon]:    (Crying) okay (crying)

Operator:    Where are you at[?]

[Antillon]:    (Crying) I'm right here in the hall way (crying)

Operator:    Is he there with you?

[Antillon]:    No he left (crying) he just broke the window cause I wouldn't open the door for him

Operator:    Oh so is he outside or is he inside?

[Antillon]: No he just ran outside he threw something in the window I don't know what it was , but (inaudible)

. . . .

Operator: Okay wait which way did he go[?]

[Antillon]: (Crying) I'm sure he went to his mom she lives on Juniper he lives about a block away from here

Operator: Did he leave on foot or in a vehicle

[Antillon]: (Crying) no in a car

Operator: What color of car?

[Antillon]: It is a black car

. . . .

Operator: Okay what was he wearing do you know what he looked like when

[Antillon]: He was wearing a blue Ego Jacket with black jeans [(]crying[)]

Operator: What's his name [?]

[Antillon]: Paul Borunda

The operator asked Antillon how to spell Defendant's last name and asked for Defendant's date of birth. Antillon spelled his last name and provided Defendant's date of birth to the operator.

12

The jury was instructed that in order to find Defendant guilty of breaking and entering as charged in Count 2, the State had to show that (1) Defendant "entered a structure without permission; the least intrusion constitutes an entry" and (2) the "entry was obtained by the breaking of a window." When the operator asked if Defendant was outside or inside, Antillon replied, "No he just ran outside." When Antillon was asked if Defendant was still there with her, she answered, "No he left . . . he just broke the window cause I wouldn't open the door for him." Based on the evidence, a reasonable jury could conclude that Defendant broke the window to gain access and entered the house before Antillon called 911. We hold that there was sufficient evidence to support Defendant's breaking and entering conviction.

**Misdemeanor Property Damage**

Next, relying on *State v. Powels*, 2003-NMCA-090, ¶¶ 1, 5, 134 N.M. 118, 73 P.3d 256, Defendant argues that his conviction of property damage required the State to prove that he intentionally damaged another's property and that the State failed in its proof because it did not present any evidence indicating that the damaged property did not belong to Defendant. We are unpersuaded. *Powels* is distinguishable because in that case the defendant damaged community property. *See* 2003-NMCA-090, ¶ 4 (noting that the damaged car was community property and "the interest of each spouse in the community property is equal with that of the other spouse" (emphasis omitted)).

Defendant and Antillon were not married and did not have community property. Although Antillon said Defendant had a key to the house, Defendant had moved out at least three months before the incident, and he was living with his mother about a block away. Also, as the State points out, Antillon testified that she and Defendant had signed a lease on the house. The jury could reasonably infer that the house belonged to a third-party landlord. We hold that there was sufficient evidence to support Defendant's misdemeanor property damage conviction.

**The Detective's Testimony**

Defendant argues, under claims of plain or fundamental error, that Detective Upshaw's testimony improperly invaded the province of the jury. "[T]his court may review evidentiary questions although not preserved if the admission of the evidence constitutes plain error. The plain-error rule, however, applies only if the alleged error affected the substantial rights of the accused." *State v. Contreras*, 120 N.M. 486, 492, 903 P.2d 228, 234 (1995), *limited on other grounds as recognized by State v. Rackley*, 2000-NMCA-027, 128 N.M. 761, 998 P.2d 1212. We use plain error sparingly "because the plain[-]error rule is an exception to the general rule that parties must raise timely objection to improprieties at trial." *State v. Torres*, 2005-NMCA-070, ¶ 9, 137 N.M. 607, 113 P.3d 877. The plain-error rule applies to evidentiary matters, not merely evidentiary rulings. *State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071,

14

1074 (1993). "The predicate for review on the basis of plain error is less stringent than for fundamental error." *Id.* The more stringent rule of fundamental error "applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992). "In either case, we must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *Lucero*, 116 N.M. at 453, 863 P.2d at 1074.

When asked by the prosecution if this was the first time that he had a situation where a victim of domestic violence changed her story, Detective Upshaw replied as follows.

> A. I would say around [fifty] percent of the time, the victim will either change her story completely or minimize, trying to make things not seem as bad as they are.
>
> . . . .
>
> Q. Based on your experience and training and the experience you have had in dealing with victims who have changed their story, based on that training, would you be able to say whether or not[,] generally[,] the first thing they say is what actually happened, or is it the latter story?
>
> A. It's usually the first statement. The first statement that is made is usually closer to the truth.

15

Q.      And in dealing with victims of domestic violence and your training and experience, will victims become uncooperative with law enforcement, not wanting to talk to you or other officers?

A.      It happens more often than not.  It happens a great deal.

Q.      So the fact that Ms. Antillon has changed her story in this case, that's not something you find unusual?

A.      No, it is not.

Q.      The fact that she wouldn't call you back again after talking to you initially, is that something you find unusual?

A.      No, it is not.

As a preliminary matter, we note that Detective Upshaw was not qualified as an expert by the State before offering this testimony.  "Under Rule 11-702 [NMRA], a witness must qualify as an expert in the field for which his or her testimony is offered before such testimony is admissible.  In most cases, this means that the calling party must qualify the witness to testify as an expert first, before any substantive testimony is given." *Lopez v. Reddy*, 2005-NMCA-054, ¶ 15, 137 N.M. 554, 113 P.3d 377 (internal quotation marks and citations omitted).  However, it appears that in the present case, similar to *State v. Hill*, 2008-NMCA-117, 144 N.M. 775, 192 P.3d 770, the defense chose to cross-examine the witness rather than objecting on competency grounds. *See id.* ¶ 22.  Accordingly, Defendant waived any arguments with regard to plain error based on the detective's qualifications to testify as an expert. *See id.*

Nevertheless, Defendant argues that it was improper for Detective Upshaw to testify concerning which of Antillon's version of the events deserved to be believed. We are unpersuaded. Expert testimony may not be offered to establish that the alleged victim is telling the truth because that is for the jury to decide. *State v. Alberico*, 116 N.M. 156, 175, 861 P.2d 192, 210-11 (1993). However, an expert witness may testify regarding recantation of witnesses in general, as long as the expert witness does not testify about the truthfulness of the particular victim in the case at issue. *See State v. Neswood*, 2002-NMCA-081, ¶ 19, 132 N.M. 505, 51 P.3d 1159 (concluding that a child abuse expert did not invade the province of the jury when her testimony was limited to information regarding recantation in general and not whether one or the other statements of the victim was true). Here, the detective testified as to what his experience had been with victims of domestic violence in general. When asked if this was the first time a victim changed her story, he indicated that in his experience victims change their story or minimize the events around fifty percent of the time. When asked whether the truth is, generally, the first recount the victim gives or whether it is the latter recount of an incident, Detective Upshaw responded that "[t]he first statement that is made is usually closer to the truth." He did not testify in a manner that related to Antillon's specific statements in this case. Furthermore, the defense had the opportunity to cross-examine Detective Upshaw. When asked about

17

this subject, Detective Upshaw stated that sometimes the initial report is the one that is wrong. We conclude that Defendant's substantial rights were not affected and allowing Detective Upshaw's testimony did not constitute plain or fundamental error.

**CONCLUSION**

We affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**LINDA M. VANZI, Judge**