ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Rankin County 'Circuit Court found Phillip Young guilty of felony evasion and burglary of an automobile. The circuit court found that Young qualified for enhanced sentencing as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2008) and sentenced Young to life in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation. Following his unsuccessful post-trial motions, Young appeals. Young argues that there was insufficient evidence to find him guilty of burglary of an automobile. Additionally, Young claims that the overwhelming weight of the evidence indicated that he was guilty of misdemeanor fleeing, instead of felony evasion. Finally, Young contends that the circuit court erred when it sentenced him as a habitual offender pursuant to section 99-19-83. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. This appeal stems from events that were set into motion when Young decided to siphon fuel from an eighteen-wheeler that was parked near Roses Discount Store in Pearl, Mississippi. That eighteen-wheeler belonged to Ricky Sherman. Sherman had left his eighteen-wheeler in the parking lot while he and his wife, Deborah, took a trip on their motorcycle. As they were returning home, the Sher-mans went past Roses Discount Store. He saw another eighteen-wheeler parked unusually close to his. Sherman pulled into the parking lot to investigate.
¶ 3. Sherman discovered that Young was using an electric pump to siphon the fuel from Sherman’s eighteen-wheeler. Young fled when Sherman confronted him. The Shermans called 911 as they followed Young through several neighborhoods and eventually onto 1-20, where several law-enforcement officers began to follow Young. For the next forty minutes, law-enforcement officers followed Young as he drove his eighteen-wheeler in a counterclockwise loop around Jackson, Mississippi. Young traveled west on 1-20, then north on 1-55, and finally south on 1-220. On multiple occasions, law-enforcement officers attempted to flatten Young’s tires with spike strips, but Young drove around them. However, as Young approached the Clinton Boulevard exit off of 1-220, law-enforcement officers put out a set of spike *264 strips that Young was not able to avoid. With his tires disabled, Young attempted to flee on foot. He was quickly detained by law-enforcement officers.
¶ 4. Young was later indicted on five counts: felony evasion, two counts of aggravated assault of a law-enforcement officer, aggravated assault, and automobile burglary. The prosecution opted to dismiss one of the two counts of aggravated assault of a law-enforcement officer. On March 23, 2010, Young went to trial. The jury found Young not guilty of aggravated assault of a law-enforcement officer and aggravated assault. However, the jury found Young guilty of felony evasion and burglary of an automobile. The circuit court sentenced Young to one sentence of life in the custody of the MDOC without eligibility for parole or probation. Following his unsuccessful post-trial motions for a judgment notwithstanding the verdict (JNOV) or a new trial, Young appeals.
ANALYSIS
I. BURGLARY OF AN AUTOMOBILE
¶ 5. Young argues that there is insufficient evidence to find him guilty of automobile burglary. According to Young, because he did not enter Sherman’s eighteen-wheeler when he siphoned Sherman’s fuel, the jury could have only found him guilty of larceny. Young requests that we reverse the judgment of conviction for automobile burglary and render a judgment of acquittal.
¶ 6. “A motion for a [JNOV] is a challenge to the sufficiency of the evidence.” Gilbert v. State, 934 So.2d 330, 335 (¶ 9) (Miss.Ct.App.2006). As our Mississippi Supreme Court has stated:
in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for ... [a JNOV], the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citations and quotations omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Id. (internal citations and quotations omitted).
¶ 7. Count V of the indictment charged Young with burglary of Sherman’s eighteen-wheeler. Mississippi Code Annotated section 97-17-33(1) (Rev.2006) provides as follows:
Every person who shall be convicted of breaking and entering, in the day or night, any ... automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transporta *265 tion, with intent to steal therein, or to commit any felony ... shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.
The precise issue is whether siphoning fuel from a vehicle qualifies as burglary of an automobile. This is a case of first impression in Mississippi. Young claims the circuit court should have granted his motion for a JNOV because he never “entered” Sherman’s eighteen-wheeler when he siphoned Sherman’s fuel from an exterior fuel tank. Young cites Smith v. State, 881 So.2d 908, 910-11 (¶ 11) (Miss.Ct.App.2004) and draws our attention to the fact that, in that case, the theft of rims was sufficient to convict a defendant of grand larceny. Young argues that the theft of fuel from an exterior fuel tank must likewise be grand larceny. Young finds further support of his position from the fact that one is guilty of petit larceny if he adds fuel to his vehicle and then drives away from a gas station without paying for that fuel. Miss.Code Ann. § 97-17-43 (Rev.2006).
¶ 8. Young also cites decisions from other states in which convictions for theft or larceny were upheld after defendants siphoned fuel from vehicles. See People v. Caraballo, 188 A.D.2d 607, 591 N.Y.S.2d 76 (N.Y.App.Div.1992); Hensley v. State, 497 N.E.2d 1053 (Ind.1986); Stackowitz v. State, 68 Md.App. 368, 511 A.2d 1105 (1986); State v. Smith, 470 A.2d 793 (Me.1984); Larson v. State, 613 P.2d 1251 (Ala.1980). In R.E.S. v. State, 396 So.2d 1219, 1220 (Fla.Dist.Ct.App.1981), the Florida Court of Appeals held that, under Florida’s burglary statute, siphoning fuel from the tank of a vehicle did not constitute an entry because Florida’s burglary statute contemplated only vehicle compartments “which can be entered either wholly or partially by a person; e.g., engine and passenger compartments, trunks, etc.”
¶ 9. However, the New Mexico Court of Appeals recently distinguished the decision in R.E.S. when it held that “it is apparent that burglary in Florida contemplates the entry of a vehicle compartment large enough to accommodate at least a part of a person and that the theft actually occurred within the vehicle. Not so in New Mexico, where a slight entry by use of an instrument is sufficient.” State v. Muqqddin, 148 N.M. 845, 242 P.3d 412, 416 (2010) (internal citation omitted). The New Mexico Court of Appeals further elaborated that: “A fuel tank — attached as it is, to a vehicle — is unquestionably a part of that vehicle and absolutely necessary for its primary function as a mode of transportation. Any penetration of a vehicle’s perimeter is thus a penetration of the vehicle itself.” Id. at 415.
¶ 10. Although the decision in Muqqddin is not controlling in Mississippi, we find the reasoning in that decision to be persuasive. Particularly in light of our own precedent that “any effort, however slight, such as the turning of a door knob to enter, constitutes a breaking.” Templeton v. State, 725 So.2d 764, 766 (¶ 5) (Miss.1998) (quoting Alford v. State, 656 So.2d 1186, 1190 (Miss.1995)). “It does not matter that the opening used is not intended for human access.” Goldman v. State, 741 So.2d 949, 952 (¶ 8) (Miss.Ct.App.1999). Sherman testified that Young would have had to “push down on [the gas cap] and click it to open [it].” Sherman also testified that Young “had a pump with a long stem stuck down into my tank.” Consequently, the jury heard sufficient evidence that Young’s actions in opening Sherman’s gas cap and inserting a pump into Sherman’s fuel tank qualified as “breaking and entering.” It follows that there was sufficient evidence to find Young guilty of burglary of an automobile. We, therefore, find no merit to this issue.
*266 II. FELONY EVASION
¶ 11. In this issue, Young argues that his conviction for felony evasion is contrary to the overwhelming weight of the evidence. Young claims that the evidence supports a conviction for misdemeanor fleeing in violation of Mississippi Code Annotated section 97-9-72(1) (Rev. 2006), instead of felony evasion in violation of Mississippi Code Annotated section 97-9-72(2) (Rev.2006). Young requests that we reverse the judgment of the circuit court finding him guilty of felony evasion and remand this matter for a new trial.
¶ 12. We are mindful that, as we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The supreme court has further instructed that, when reviewing a trial court’s decision to deny a motion for a new trial:
The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (footnote and internal citations and quotations omitted).
¶ 13. Section 97-9-72(1) sets forth as follows:
The driver of a motor vehicle ... who willfully fails to obey [a law-enforcement officer’s command to stop a motor vehicle] shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed One Thousand Dollars ($1, 000.00) or imprisoned in the county jail for a term not to exceed six (6) months, or both.
Section 97-9-72(2) sets forth as follows:
Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for not more than five (5) years, or both.
Accordingly, the determinative feature regarding whether Young was guilty of misdemeanor fleeing or felony evasion is whether the weight of the evidence supports the conclusion that Young drove either “in such a manner as to indicate a reckless or willful disregard for the safety of persons or property” or “in a manner manifesting extreme indifference to the value of human life.”
¶ 14. Young notes that Officer Pat Walker testified that Young did not drive faster than seventy to seventy-five miles per hour during the pursuit. Young also notes Sherman’s testimony that Young did not drive faster than sixty-five to seventy *267 miles per hour. Young concludes that he was not involved in a “high-speed” chase. Young also notes that he neither hit nor attempted to hit any other vehicles. According to Young, “[ejxcept when avoiding spike strips, ... Young stayed in his lane of traffic.” Young draws our attention to the fact that he had been accused of trying to hit a police officer, but the jury found Young not guilty of aggravated assault of a law-enforcement officer.
¶ 15. Next, Young argues that his “last minute decision to take the Interstate 55 exit off of Interstate 20 does not constitute reckless endangerment.” Young further argues that his last-minute decision to take the 1-55 exit “did not result in any accidents and, given ... Young’s normal rate of speed, this decision does not amount to a willful disregard for the safety of others.”
¶ 16. Finally, Young discusses the fact that the circuit court noted that Young ran through a stop sign as he exited and entered the interstate at the Industrial Drive exit off of 1-220. According to Young, “[gjiven that there was no traffic in the area, this is simply too weak evidence.” Young concludes that the “police pursuit does not ‘upgrade’ from a misdemeanor fleeing case to a felony [evasion] case simply because [he] failed to pull over for nearly forty minutes.”
¶ 17. The State’s entire argument under this heading is that: “It is the State’s clear and concise position that the testimony of Officer [Ernie] Scarber and the video (DVD) of his pursuit presented an abundance of credible, legally sufficient evidence by which the jury could find the defendant guilty of felony [evasion].” Notwithstanding the State’s minimal argument under this issue, the evidence at trial indicated that, at the interchange where 1-20 meets 1-55, Young suddenly “snapped” his truck north toward 1-55. When Young did so, multiple law-enforcement vehicles were forced to evade Young and each other. Officer Scarber of the Pearl Police Department testified that he attempted to deploy spike strips, but Young evaded them. As Officer Scarber attempted to get ahead of Young by passing him on Young’s left, Young crossed into Officer Scarber’s lane and prevented Officer Scarber from passing him. Officer Scarber was fifteen to eighteen feet from Young when Young moved into Officer Scarber’s lane. Officer Scarber testified that Young would have hit his patrol car if he had not avoided Young.
¶ 18. Viewed in the light most favorable to the verdict, the jury could have found that Young’s driving evidenced a reckless or willful disregard for the safety of others. Consequently, the jury’s verdict of guilty for felony evasion does not constitute an unconscionable injustice that would warrant a reversal of the circuit court’s decision to deny Young’s motion for a new trial. It follows that we find no merit to this issue.
III. SENTENCE AS A HABITUAL OFFENDER
¶ 19. Young argues that the circuit court erred when it sentenced him to life imprisonment pursuant to section 99-19-88. According to Young, the circuit court erred when it found that Young’s previous conviction for carjacking was a crime of violence. Young claims that the prosecution failed to present any authority that “unarmed carjacking” should be considered a violent crime for the purposes of enhanced sentencing as a habitual offender as set forth in section 99-19-88.
¶ 20. Section 99-19-83 provides as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal *268 crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Young correctly asserts that Mississippi law distinguishes armed carjacking and what Young characterizes as “unarmed carjacking.” However, just because a carjacking does not qualify as “armed carjacking” does not preclude the possibility that violence occurred during the commission of the offense. Mississippi Code Annotated section 97-3-117(1) (Rev.2006) provides as follows:
Whoever shall knowingly or recklessly by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, or attempting to do so, or by any other means shall take a motor vehicle from another person’s immediate actual possession shall be guilty of carjacking.
(Emphasis added). Accordingly, “unarmed carjacking” may qualify as a “crime of violence” for the purposes of enhanced sentencing pursuant to section 99-19-83. One may argue that an accused may properly be convicted of carjacking under section 97-3-117(1) if he “knowingly by sudden or stealthy seizure ... or by any other means” takes a motor vehicle from another person’s “immediate actual possession” without any requirement that the prosecution prove that the accused employed violence, force, or the threat of force. Such is of no consequence to Young, because the prosecution proved that in Young’s prior unarmed carjacking felony conviction, Young employed violence and force against the victims of that crime.
¶ 21. During the bifurcated sentencing proceeding, the prosecution noted that Young had appealed his prior conviction for “unarmed carjacking.” The prosecution further noted that Young’s appeal had been affirmed by this Court in Young v. State, 962 So.2d 110 (Miss.Ct.App.2007). The facts of Young’s previous conviction were discussed at length in that decision. To be precise, the facts of Young’s prior conviction for carjacking are as follows:
Martha Grant testified that she and Jerry Parker, her boyfriend at the time and husband at the time of trial, were washing their vehicles at the Double Quick car wash on Highway 82 in Indianola, Mississippi, on November 9, 2001. Grant’s vehicle, a white Bonneville, was parked in one stall and both Grant and Parker were washing it and the green Maxima, Parker’s vehicle, was parked in the stall next to them. At the time of the carjacking, Parker had asked Grant to get some more change from the Maxi-ma so that they could finish washing the Bonneville. Grant testified that after she retrieved the change from the Maxi-ma, she was approached by Young from behind and as she turned around Young shoved her and said “give me those damn keys.” Grant then testified that Young “snatched them out of her hand ” and she ran to tell Parker what had happened. Grant further testified that the Maxima stalled as Young tried to drive off and she and Parker had a clear view of Young and he was “grinning at them.” According to Grant, she and Parker then got in the Bonneville and pursued the Maxima down Highway 82 toward Greenville and then onto Road 448 going toward Shaw. At some point on 448, the driver of the Maxima turned off the road and parked briefly, but then *269 turned around and met the Bonneville head on and hit the passenger side of the Bonneville before continuing toward Shaw. No one involved was injured. Grant testified that as she and Parker followed the Maxima they shouted to a friend passing, “Somebody stole Jerry’s car. Call the police.” Grant further stated that after the Maxima had hit them they stopped at a lady’s house somewhere on Road 448 and called the police. According to Grant, the police said they had already received a call about the incident and they were “on their way out there looking for him.” Grant said next they went to the Indian-ola Police Station to give their statements. While at the station, the police brought in Young, in handcuffs, and Grant testified that she stated, “that’s him.” She further stated that no one at the station specifically pointed Young out to her or asked her to identify him. Grant further identified Young in court as the man who had shoved her and driven off in the Maxima from the Double Quick, and as the same man who ran into her and Parker on the county road while they were in pursuit of the Maxi-ma.
The State then presented testimony by Parker, who corroborated Grant’s testimony regarding his and Grant’s presence at the Double Quick on Highway 82 and that a man drove off in the Maxima while they were there attempting to wash their cars. Specifically, Parker testified that after Grant told him that someone had just stolen his car, he ran to the stall where the Maxima was parked and that the car had stalled as Young was attempting to drive off. Parker stated, “I was standing in front of the car. I was looking at the guy that was in the car, and he was looking at me laughing.” He stated that once the car quit stalling, Young drove right toward him and he had to jump out of the way to keep from being hit. Parker testified that he was about five feet from the front of the Maxima when Young drove off and that he got a good look at the driver for about fifteen seconds. Parker further corroborated Grant’s testimony regarding their pursuit of the Maxima and also testified that Young was the driver of the Maxima as it side-swiped them on the county road. Parker testified that after they abandoned their pursuit and called the police, they went to the Indianola Police Station and that while they were there the police brought Young in, in handcuffs. Parker testified that upon seeing Young at the police station, “I told the police officer, the guy that I made the report out to, I told him ‘that’s the guy that stole my car.’ ” Parker also identified Young in the courtroom as the man who drove off in his car at the Double Quick and the same driver as was out on the county road.
Id. at 112-13 (¶¶ 3-4) (emphasis added).
¶ 22. During the bifurcated proceeding, the prosecution informed the circuit court of the facts discussed in Young. As the circuit court held that Young qualified for enhanced sentencing as set forth in section 99-19-83, the circuit court noted that, in Young, Young had shoved the victim from behind and snatched the keys out of her hand. Consequently, the circuit court acted appropriately when it held that Young’s previous conviction for “unarmed carjacking” had been a crime of violence. It follows that we find no merit to this assignment of error.
¶ 23. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, FELONY EVASION, AND COUNT V, AUTOMOBILE BURGLARY, AND SENTENCE OF LIFE AS A HABITUAL OFFENDER IN THE CUSTODY OF *270 THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. IRVING, P.J., NOT PARTICIPATING.