**Certiorari Granted, August 2, 2010, No. 32,430**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-069**

**Filing Date:  May 5, 2010**

**Docket No. 28,474**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**ABDUL MUQQDDIN,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**KENNEDY, Judge.**

**{1}**      Abdul Muqqddin (Defendant) used a nail to penetrate the gas tank of a van parked in a dark alley without the permission of the owner.  After piercing the tank, Defendant positioned a container below the hole so as to catch the fuel as it drained from the van.  The van was in extremely bad condition and had been parked in the alley for as many as six months, though it had not been abandoned.  Defendant appeals his convictions for auto

1

burglary under NMSA 1978, Section 30-16-3 (1971), criminal damage to property under NMSA 1978, Section 30-15-1 (1963), and larceny under NMSA 1978, Section 30-16-1 (1987) (amended 2006). Defendant argues that penetrating a gas tank with a nail is insufficient to constitute an entry under the burglary statute, and because he believed the van to be abandoned, he lacked the requisite intent to commit the crimes of burglary, criminal damage, and larceny. As a result, Defendant claims, his convictions are unsupported by substantial evidence. We hold that entry, under Section 30-16-3, is complete when a defendant penetrates a gas tank with a nail. We also hold that substantial evidence supports Defendant's convictions. We affirm.

**FACTS**

**{2}**     Neither party disputes what took place in the early morning hours of August 21, 2005. An Albuquerque police officer, responding to an unrelated call, heard loud banging noises coming from an alley. Suspicious of the noise, he stopped his vehicle at the entrance to the alley and cautiously investigated on foot. After proceeding approximately halfway down the alley, the officer saw Defendant lying underneath a van. Next to Defendant was a red plastic container, positioned beneath the van to catch fuel dripping from the tank. The officer detained Defendant, asked him his name, and Defendant falsely identified himself as Edward Edgerton. A routine computer check revealed that Edgerton had an outstanding warrant for his arrest, and at that time, Defendant gave the officer his real name.

**{3}**     When asked what he was doing under the van, Defendant first stated that he was taking gas from the tank with the permission of the owner. Upon further questioning, however, Defendant admitted that he did not have permission to take the gas, but that because the van was abandoned, it was alright for him to do so. He said he had used a nail to create a hole in the tank so that the gas could escape, and two nails were found in his pocket. At that point, the officer placed Defendant under arrest and called for additional personnel to assist in an investigation of the scene.

**{4}**     Police identified the van's owner as Emil Hanson, the proprietor of a nearby dry cleaning business. Hanson had purchased the van approximately two years prior but stopped driving it when it became too expensive for him to do so. While trying to figure out what to do with it, he purchased a new van and parked the old one in the alley behind his business. He testified that although the van was in bad condition and could have been sitting in the alley for as many as six months, he had neither abandoned it nor given Defendant permission to enter or remove fuel from it.

**{5}**     When the State completed its case in chief, Defendant made a motion for directed verdict on all counts. In pertinent part, Defendant argued that penetration of a gas tank with a nail is insufficient to constitute burglary in New Mexico, and further, that he lacked the requisite intent to commit burglary, criminal damage, and larceny because he thought the van was abandoned. As a result, Defendant contended, substantial evidence did not support the charges against him. These arguments failed to persuade the district court, Defendant's

motion was denied, and he was convicted as stated above. Defendant now reasserts the arguments from his motion for directed verdict.

**STANDARD OF REVIEW**

**{6}** Under a substantial evidence review, we determine whether the parties presented substantial evidence at trial to support the verdict "beyond a reasonable doubt with respect to every element essential to [the] conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Such evidence may be of either a direct or circumstantial nature. *Id.* And in considering the effect of such evidence, "we resolve all disputed facts in favor of the [s]tate . . . and disregard all . . . inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). We will neither reweigh the evidence nor substitute our judgment for that of the jury. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. As an appellate court, we are not concerned that some hypothesis might be designed that would be consistent with an acquittal. *Id.* at 130-31, 753 P.2d at 1318-19. And to the extent that we engage in statutory interpretation or consider the district court's legal conclusions, we do so de novo. *State v. Barragan*, 2001-NMCA-086, ¶ 24, 131 N.M. 281, 34 P.3d 1157.

**THE CRIME OF BURGLARY**

**{7}** Section 30-16-3 defines the crime of burglary as "the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein." As such, Section 30-16-3 expresses "a radical departure from its common law predecessor," which required "(1) breaking and (2) entering (3) a dwelling house (4) of another (5) in the nighttime (6) with the intent to commit a felony therein." *State v. Rodriguez*, 101 N.M. 192, 193, 679 P.2d 1290, 1291 (Ct. App. 1984); *see State v. Bybee*, 109 N.M. 44, 45, 781 P.2d 316, 317 (Ct. App. 1989). Thus, our Legislature has chosen to keep only the element of entry completely intact. *Rodriguez*, 101 N.M. at 193, 679 P.2d at 129. As this Court has held, entry contemplates penetration of a space by either a person or an instrument. *State v. Tixier*, 89 N.M. 297, 298-99, 551 P.2d 987, 988-89 (Ct. App. 1976) (holding that a one-half-inch penetration with an instrument is enough to effectuate an entry; "[a]ny penetration, however slight, of the interior space is sufficient").

**{8}** This Court's opinions in *Rodriguez* and *State v. Reynolds*, 111 N.M. 263, 804 P.2d 1082 (Ct. App. 1990), define the limits of entry in the context of vehicle burglary. In *Rodriguez*, the defendant reached into the uncovered bed of a pickup truck and removed a toolbox with the intent of taking it unlawfully. 101 N.M. at 193, 679 P.2d at 1291. This Court held that such an entry is sufficient to constitute a burglary. "[W]e hold that the bed of a pickup truck, as a part of a vehicle, falls within the statutorily protected area." *Id.* at 194, 679 P.2d at 1292. A similar issue prompted the analysis in *Reynolds*. In that case, like the one before us, police found the defendant on the ground beneath a vehicle. Testimony at trial established that he reached into the engine compartment from underneath in an apparent attempt to remove the vehicle's starter. *Reynolds*, 111 N.M. at 264-65, 804 P.2d

3

at 1083-84. This Court, citing *Tixier*, held that such an act is sufficient to sustain a conviction for burglary. *Reynolds*, 111 N.M. at 270, 804 P.2d at 1089. "In establishing a burglary, [a]ny penetration, however slight, of the interior space is sufficient [to constitute entry]. Since there was no dispute that [the] defendant's hand penetrated the engine compartment of the vehicle, there would have been no rational basis for the jury to find attempted burglary but not burglary itself[.]" *Id.* (second alteration in original) (internal quotation marks and citation omitted). Thus, a jury could reasonably conclude that a burglary had occurred. *Id.*

**{9}** We are sympathetic to the unique facts of Defendant's case. He was found draining fuel from the tank of a van with no license plate, several broken windows, and four flat tires. The investigating officer testified that the van would have been unsafe to drive, and Hanson, the owner, testified that the van might have been sitting in the alley for as many as six months prior to the incident. In fact, during direct examination, Hanson stated that although the van had not been abandoned, his plan for it was to "just give it to charity or try to sell it for the engine."

**{10}** Necessary or not, that which might be a prudent measure of justice must bow to that which the State may legally prove. Simply put, Defendant was properly charged. He did not have permission to enter the van, and his actions clearly constitute entry under New Mexico's burglary statute.

**{11}** By Defendant's own uncontroverted admission to police, he laid down on the ground beneath the van, procured an instrument, and used it to create a hole in the tank. As fuel dripped from the hole, he caught it in a container specifically positioned to do so. He did not own the van or the fuel. Such facts are plainly analogous to this Court's opinions in *Rodriguez* and *Reynolds*. A fuel tank—attached as it is, to a vehicle—is unquestionably *a part of* that vehicle and absolutely necessary for its primary function as a mode of transportation. Any penetration of a vehicle's perimeter is thus a penetration of the vehicle itself. *See Reynolds*, 111 N.M. at 270, 804 P.2d at 1089. Like the defendant's entry of the truck bed in *Rodriguez*, this Defendant reached into the undercarriage of the van and removed fuel from inside the tank located there. *See Rodriguez*, 101 N.M. at 193, 679 P.2d at 1291. In fact, Defendant went even further by puncturing the tank in order to effectuate the theft. But perhaps even more analogous is *Reynolds*. In that case, the defendant reached into the engine compartment from underneath so he could remove the starter. *Reynolds*, 111 N.M. at 265, 270, 804 P.2d at 1084, 1089. Likewise, Defendant in this case reached into the fuel tank, albeit via an instrument, in order to remove fuel, and as this Court has held, "[a]ny penetration, however slight . . . is sufficient." *Id.* at 270, 804 P.2d at 1089.

**{12}** The facts of the instant case fit cleanly within the conceptual framework established by *Reynolds* and *Rodriguez*, and understandably, Defendant had difficulty distinguishing those opinions. He thus relies heavily upon out-of-state cases to support his argument, but each is readily distinguishable in either law or fact. For instance, in *People v. Davis*, 958 P.2d 1083, 1090 (Cal. 1998), the defendant placed a forged check into the deposit window

4

of a check cashing business. The court held that such an act, although technically an entry with the intent to commit a theft, should nevertheless not be considered an entry for purposes of California's burglary statute. *Id.* Likewise, in *R.E.S. v. State*, 396 So. 2d 1219, 1220 (Fla. Dist. Ct. App. 1981), the court analyzed whether, under Florida's burglary statute, siphoning gas from the tank of a vehicle constituted an entry. It held that siphoning did not constitute an entry and based its holding on the notion that Florida's burglary statute contemplates only vehicle compartments "which can be entered either wholly or partially by a person; e.g., engine and passenger compartments, trunks, etc." *Id.* Finally, the Florida Supreme Court reached the same conclusion in *Drew v. State*, 773 So. 2d 46, 47 (Fla. 2000), when it considered whether the removal of tires or hubcaps from a vehicle constituted an entry. In that opinion, the court held that such an act could not constitute a burglary because Florida's common law requires that the theft actually take place "within" the vehicle. Removal of a tire or hubcap, which requires disassembly, thus does not take place within the vehicle as required by the statute. *Id.* at 52.

{13}    On the facts and New Mexico law before us, the reasoning of these out-of-state authorities fails to persuade. The facts of *Davis*, for instance, are readily distinguishable. In that case, the California court held that an entry had not occurred because the chute in which the defendant placed the forged check was regularly used by other patrons who also deposited checks. Such an entry does not violate "the occupant's possessory interest in the building." *Davis*, 958 P.2d at 1089. In the case before us, Hanson's possessory interest in the van was clearly violated when Defendant punctured its tank. Nor are we persuaded by *R.E.S.* and *Drew*, the Florida opinions, which both proceed from interpretations of Florida's case law. In those cases, it is apparent that burglary in Florida contemplates the entry of a vehicle compartment large enough to accommodate at least a part of a person and that the theft actually occurred within the vehicle. *See Drew*, 773 So. 2d at 52; *R.E.S.*, 396 So. 2d at 1220. Not so in New Mexico, where a slight entry by use of an instrument is sufficient. *See, e.g.*, *Reynolds*, 111 N.M. at 264-65, 804 P.2d at 1083-84 (providing that removal of a starter from the engine compartment is sufficient to constitute burglary); *Tixier*, 89 N.M. at 298-99, 551 P.2d at 988-89 (including the use of an instrument in the definition of an entry). We turn now to Defendant's other argument on appeal.

**REQUISITE INTENT**

{14}    Defendant contends that because he believed the van to be abandoned, he could not have possessed the intent required for the crimes of burglary, criminal damage, and larceny. As such, Defendant argues, substantial evidence does not support his convictions. Burglary, criminal damage, and larceny each require that the subject property belong to another person. *See* § 30-16-3 (burglary, requiring that the defendant intended to commit a theft at the time of entry); § 30-15-1 (criminal damage to property, requiring that the defendant intended to damage property belonging to another); § 30-16-1 (larceny, requiring that the defendant intended to take property belonging to another). Generally, abandoned property does not belong to anyone and may legally be appropriated by the first taker. *See Morissette v. United States*, 342 U.S. 246, 260-261 n.19 (1952).

5

**{15}** In reviewing a conviction under a substantial evidence analysis, we will not reweigh the evidence, nor will we ignore the jury's findings for our own. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. We consider only "whether substantial evidence supports the verdict actually rendered." *State v. Neal*, 2008-NMCA-008, ¶ 19, 143 N.M. 341, 176 P.3d 330 (filed 2007). In the case before us, we hold that substantial evidence amply supports a finding that Defendant possessed the intent necessary to commit burglary, criminal damage, and larceny. Hanson's uncontroverted testimony indicated that although the van had been parked in the alley for some time, it was not abandoned. Nor had Hanson given Defendant permission to remove fuel from it. Defendant was found lying beneath the van, in the early morning hours, by an Albuquerque police officer. A container was found beside Defendant, positioned so as to catch the dripping fuel from the van's tank. Defendant failed to cooperate with police and was evasive about his actions and identity. He eventually admitted that he did not have permission to remove gas from the van, and this evidence was undisputed at trial. Although evidence that the van was abandoned does tend to establish Defendant's lack of intent, we must ignore it as long as substantial evidence supports the verdict actually rendered. *See, e.g.*, *id.* Thus, because ample evidence established Defendant's intent, we do not consider evidence that he might have reasonably believed the van was abandoned.

## CONCLUSION

**{16}** For the reasons stated above, we hold that using a nail to penetrate a vehicle's gas tank constitutes an entry under Section 30-16-3. We also hold that substantial evidence supports each of Defendant's convictions. We affirm.

**{17}   IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Muqqddin*, Docket No. 28,474**

| **CL** | **CRIMINAL LAW** |
| --- | --- |
| CL-BG | Burglary |
| CL-CL | Controlled Substances |
| CL-EL | Elements of Offense |
| CL-LC | Larceny |

CL-MH    Motor Vehicle Violations
CL-PD    Property Damage
CL-SI    Specific Intent

**CA**    **CRIMINAL PROCEDURE**
CA-SE    Substantial or Sufficient Evidence