# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2012-NMSC-029

Filing Date: August 16, 2012

Docket No. 32,430

STATE OF NEW MEXICO,

       Plaintiff-Respondent,

v.

OFFICE OF THE PUBLIC DEFENDER
ON BEHALF OF ABDUL MUQQDDIN, DECEASED,

       Defendant-Petitioner.

**and**

Docket No. 32,632

STATE OF NEW MEXICO,

       Plaintiff-Respondent,

v.

EDGAR DOMINGUEZ-MERAZ,

       Defendant-Petitioner.

ORIGINAL PROCEEDINGS ON CERTIORARI
Carl J. Butkus and Jacqueline D. Flores, District Judges

Jacqueline L. Cooper, Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender

for Petitioners

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Andrew S. Montgomery, Assistant Attorney General

1

Farhan A. Khan, Assistant Attorney General

Santa Fe, NM

for Respondent

**OPINION**

**BOSSON, Justice.**

**{1}** These consolidated cases ask this court to address for the first time the outer limits of New Mexico's burglary statute, NMSA 1978, Section 30-16-3 (1971). In more than 40 years, this Court has issued only one burglary opinion and even then on a somewhat tangential issue. *See State v. Gonzales*, 78 N.M. 218, 430 P.2d 376 (1967). By contrast, over that same time our Court of Appeals has issued numerous opinions that, for the most part, have expanded significantly the reach of the burglary statute, an expansion that has occurred without any parallel change in the statute. The opinions before us now illustrate the unprecedented scope of that expansion, which presents this Court with an opportunity to undertake a review of our burglary jurisprudence. We begin with burglary's common-law origins and the principles that inspired the development of that crime both at common law and later by legislative enactment. We look behind the words of the burglary statute, searching for the thoughts that gave birth to the text. Ultimately, we conclude that our case law has gone astray, and that we must alter our course, beginning with the two opinions before us. Accordingly, we reverse.

**BACKGROUND**

**{2}** As burglary has evolved from its common law origins, it has become increasingly difficult to discern general principles that can be applied in all cases. What has been created appears to be more of a patchwork body of law that applies to the particular situation presented rather than guiding principles to be applied to all cases. This Court is not without its share of responsibility, as we have repeatedly declined to grant certiorari to address such issues as they arose. This does not mean, however, that we must continue down that path.

**{3}** As the crime of burglary has continued to expand, it seems at times to have transformed into an enhancement for any crime committed in any type of structure or vehicle, as opposed to a punishment for a harmful entry. In the past, the typical burglary scenario involved a home invasion, and the crime was intended to protect occupants against the terror and violence that can occur as a result of such an entry. *People v. Davis*, 958 P.2d 1083, 1089 (Cal. 1998). Yet today it has become more common to add a burglary charge to other crimes where the entry itself did not create or add any potential of greater harm than the completed crime. Our Legislature has never expressed an intent that burglary be used as an enhancement, nor has it clearly authorized the steady progression of judicial expansion of burglary as seen over the past 40 years. After setting forth the undisputed facts underlying

2

each conviction, we proceed to examine the evolution of burglary in New Mexico to inform our analysis of whether these two cases and others like them truly fit within the statutory meaning of burglary.

**Facts**

**{4}**     The facts of each case are largely undisputed, only the legal effects of those facts are at issue.

**Abdul Muqqddin**

**{5}**     In the early morning hours of August 21, 2005, Albuquerque Police Officer John Friedfertig was responding in his squad car to a loud noise call. En route, Officer Friedfertig noticed some suspicious, loud banging coming from an alley. Officer Friedfertig stopped to investigate and found Defendant Abdul Muqqddin[1] lying under a van. Officer Friedfertig saw a red gas can under the van with gasoline dripping from the van's gas tank into the gas can. After being placed into custody, Defendant Muqqddin admitted using a nail or a piece of metal to puncture the gas tank and take the gas.

**{6}**     Defendant Muqqddin was charged with five separate counts for his actions-auto burglary; criminal damage to property; possession of burglary tools; larceny; and concealing identity-and a jury trial was held. At the close of the State's case, Defendant Muqqddin moved for a directed verdict on all charges. The district court granted the motion in regard to the possession of burglary tools charge, but denied the motion in regard to the other charges. The jury returned a guilty verdict on all the remaining charges, including auto burglary.

**{7}**     Defendant Muqqddin appealed to the New Mexico Court of Appeals, "arguing that puncturing the [g]as tank did not constitute an 'entry' under the burglary statute." The Court of Appeals analogized the facts presented to the facts of both *State v. Rodriguez*, 101 N.M. 192, 679 P.2d 1290 (Ct. App. 1984), and *State v. Reynolds*, 111 N.M. 263, 804 P.2d 1082 (Ct. App. 1990), involving an entry into the open bed of a pickup truck and the engine compartment of a vehicle respectively. *State v. Muqqddin*, 2010-NMCA-069, ¶ 8, 148 N.M. 845, 242 P.3d 412. The Court, relying primarily on those two prior cases, reasoned that "[a] fuel tank—attached as it is, to a vehicle—is unquestionably *a part of* that vehicle . . . . Any penetration of a vehicle's perimeter is thus a penetration of the vehicle itself." *Id.* ¶ 11. The Court then held that "Defendant in this case reached into the fuel tank, albeit via an instrument, in order to remove fuel," which is sufficient to support a conviction for burglary.

---

[1] Since this case was appealed, Defendant Muqqddin passed away and the Public Defender's Office was substituted as the defendant in his case. In keeping with the convention of the briefing, we will continue to refer to the defendant in this case as Defendant Muqqddin.

*Id.*

**{8}** The Court of Appeals also rejected Defendant Muqqddin's reliance on out-of-state authority, most notably *R.E.S. v. State*, 396 So. 2d 1219 (Fla. Dist. Ct. App. 1981). In *R.E.S.*, the Florida District Court of Appeal rejected the idea that siphoning gas amounts to burglary under Florida law. *Id.* at 1220. That Court reasoned that all prior Florida vehicle burglary cases "involved the entry into a compartment of a vehicle which can be entered either wholly or partially by a person; e.g., engine and passenger compartments, trunks, etc." *Id.* The *Muqqddin* Court distinguished that case by stating that while "burglary in Florida contemplates the entry of a vehicle compartment large enough to accommodate at least a part of a person" but it is "[n]ot so in New Mexico, where a slight entry by use of an instrument is sufficient." 2010-NMCA-069, ¶ 13.

**Edgar Dominguez-Meraz**

**{9}** Before his trial, Defendant Edgar Dominguez-Meraz filed a motion to dismiss the burglary charge filed against him. He was charged with burglary for allegedly removing the two rear wheels of a vehicle and the lug nuts of the front wheels. The motion acknowledges that Defendant Dominguez-Meraz was one of two individuals apprehended near a vehicle missing two rear tires and the lug nuts from the front wheels. He argued, however, even if those facts were true, as a matter of law he could not be convicted of burglary for those actions because there was no entry as required by the statute. The district court agreed with Defendant Dominguez-Meraz and ordered the burglary charge dismissed.

**{10}** The State appealed the dismissal to the New Mexico Court of Appeals. In a memorandum opinion relying on *Muqqddin*, 2010-NMCA-069, the Court of Appeals reversed. *State v. Dominguez-Meraz*, No. 30,382, slip op. at 1 (N.M. Ct. App. Sept. 15, 2010). The Court relied on the same language quoted above from *Muqqddin*, that "[a] fuel tank . . . is unquestionably *a part of* that vehicle . . . . Any penetration of a vehicle's perimeter is thus a penetration of the vehicle itself." *Dominguez-Meraz*, No. 30,382, slip op. at 1 (*quoting Muqqddin*, 2010-NMCA-069, ¶ 11.).

**{11}** Again, the Court declined to follow some of the same out-of-state authorities presented in *Muqqddin*. *Id.* The Court declined to follow *Drew v. State*, 773 So.2d 46 (Fla. 2000), which held that the removal of hubcaps and tires from a vehicle is not burglary, concluding that "Florida's interpretation of its burglary statute [is] unpersuasive." *Dominguez-Meraz*, No. 30,382, slip op. at 1. Again, the Court held that "in New Mexico a slight entry by use of an instrument is sufficient" and as a result the "removal of a vehicle's wheels is sufficient to constitute burglary in violation of Section 30-16-3(B)." *Dominguez-Meraz*, No. 30,382, slip op. at 1 (internal quotation marks and citations omitted).

**Proceedings Before This Court**

**{12}** Before this Court, both parties argued primarily over whether each defendant's

actions amounted to an "entry" under New Mexico law. In addition, we asked the parties for additional briefing addressing NMSA 1978, Section 30-16D-5 (2009), Injuring or Tampering with a Motor Vehicle, and whether the Legislature intended to punish the conduct presented in the present cases under that statute. For the reasons that follow, we hold that a vehicle's gas tank and wheel wells do not constitute a protected space under Section 30-16-3 and as a result cannot be burglarized under the statute as presently drafted.

## DISCUSSION

### Standard of Review

{13} This case requires us to construe New Mexico's burglary statute, Section 30-16-3. Accordingly:

> [s]tatutory construction is a matter of law we review de novo. Our primary goal is to ascertain and give effect to the intent of the Legislature. In doing so, we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish. We must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction.

*State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868 (internal quotations and citations omitted).

> Section 30-16-3 reads as follows
>
> [b]urglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, moveable or immovable, with the intent to commit any felony or theft therein.

The statute also divides the crime into different grades, with the entry of a dwelling being a third degree felony while entry into any of the other enumerated objects being a fourth degree felony. Section 30-16-3(A) & (B).

{14} As a crime, burglary "had its origin in early Saxon times." Minturn T. Wright III, *Statutory Burglary—The Magic Of Four Walls And A Roof*, 100 U. Pa. L. Rev. 411, 411 (1951). The centuries have not been kind to burglary, however, and the modern statutory version, at least on its surface, bears little resemblance to its common-law predecessor. *See id.* at 415. What follows, first discusses the history of burglary, beginning with the common law and then codification in New Mexico, then explains its expansion, and finally, applies our interpretation to the facts of the present case.

### A Brief History Of Burglary

**{15}** At common law, burglary contained six elements: "(1) breaking and (2) entering (3) a dwelling house (4) of another (5) in the nighttime (6) with the intent to commit a felony therein." *Rodriguez*, 101 N.M. at 193, 679 P.2d at 1291. It is actually a peculiar type of attempt law, since "all the required elements merely comprise a step taken toward the commission of some other offense." 3 Wayne R. LaFave, *Substantive Criminal Law* § 21.1(g), at 221-22 (2d ed. 2003). "The offense originated in order to overcome certain defects in the law of attempt." 3 Charles E. Torcia, *Wharton's Criminal Law* § 316, at 224 (15th ed. 1995). Early in the days of common law:

> conduct did not constitute an attempt unless it was very close to consummation of the intended crime; and the penalties for attempt were disproportionately low. By making a breaking and entering with the requisite intent an independent substantive offense, lesser proximity to consummation of the intended crime was required, and severe penalties could be imposed.

*Id.*

**{16}** It was "an offense against the security of habitation or occupancy, rather than against ownership or property." *Id.* at 223 (footnote omitted); *accord* 3 LaFave, *supra*, § 21.1(c), at 212 ("common-law burglary found its theoretical basis in the protection of man's right of habitation"). As the Florida Supreme Court put it, "[t]he underlying purpose of the crime of burglary was to punish the forcible invasion of a habitation and violation of the heightened expectation of privacy and possessory rights of individuals in [certain] structures . . . ." *Drew*, 773 So. 2d at 47.

**{17}** Over time, odd distinctions in the various elements of the common-law crime arose. As an example, recall that at common law a burglary could only be committed in the nighttime. But, "[t]he time when the sun sets or rises [was] not controlling." 3 Torcia, *supra*, § 327, at 264. Rather, "nighttime beg[an] when . . . the countenance of a person cease[d] to be discernable by the light of the sun" and ended "when the countenance of a person bec[ame] discernable again by the light of the sun." *Id.*

**{18}** Even more oddities arose under the element of "breaking." At common law, "[r]aising a closed window was a breaking, but raising a partly open one was not." Wright, *supra*, at 412; *accord* 3 LaFave, *supra*, § 21.1(a), at 206. "In requiring a breaking the law was not asking that the occupants of a dwelling turn their home into a fortress, but only that they not leave openings which would 'invite' another to enter." 3 LaFave, *supra*, § 21.1(a), at 206-07. Thus, the common law required the occupant to take some measures to protect the dwelling against any potential invitation of unwanted trespassers. Other odd distinctions include the notion that "entering through an aperture in a wall or roof was not a constructive breaking, but crawling down a chimney was; breaking open a cupboard within a dwelling was not a breaking . . . whereas entering a closed room was." Wright, *supra*, at 412.

**Statutory Expansion**

**{19}** The original common-law elements of burglary were largely kept intact through burglary's initial codification, but our Legislature had already begun expanding the crime. *See* Compiled Laws of New Mexico 1884, Title IX, chapter III §§ 736 to 739 (Crane 1885); Compiled Laws of New Mexico 1897, Title IX, chapter III §§1109 to 1112 (1897); NMSA 1929, §§ 35-1501 to 1507. As an example, the 1953 compilation of New Mexico statutes contained several different burglary statutes designed to cover different factual scenarios, but each statute remained rooted in the common-law definition. *See, e.g.*, NMSA 1953, § 40-9-3 (1941) (defining burglary when unarmed as the breaking and entering of any dwelling house in the night-time with the intent to commit the crime of murder, rape, theft, larceny, or any felony); NMSA 1953, § 40-9-6 (1941) (defining breaking and entering into places other than dwelling houses as the breaking and entering in the night-time of any office, shop, or warehouse not adjoining to nor occupied as a dwelling house, with the intent to commit murder, rape, theft larceny or any felony); NMSA 1953, § 40-9-7 (1941) (defining entry without breaking in night-time and breaking and entry in day time as entry in night-time, with or without breaking, or breaking and entering in the day time any dwelling house, or any outhouse thereto adjoining, and occupied as such, or any office, shop, warehouse, or mine with the intent to commit murder, rape, theft, larceny, or any other felony).

**{20}** In 1963, the burglary statutes were consolidated and, along with the rest of the criminal code, recodified. *See* 1963 N.M. Laws, ch. 303, § 16-3. Under the new consolidated statute, burglary was defined, much as it is today, as "the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, moveable or immovable, with the intent to commit any felony or theft therein." NMSA 1953, § 40A-16-3 (1963). This new definition was described not only as a consolidation of the prior statutes, *see Gonzales*, 78 N.M. at 219, 430 P.2d at 377, but also as an expansion of the common-law crime, *State v. Bybee*, 109 N.M. 44, 45, 781 P.2d 316, 317 (Ct. App. 1989).

**{21}** Absent from the new statute was the common-law requirement of a "breaking," replaced by the present requirement that the entry be "unauthorized." *See* Section 30-16-3. The new statute also stripped away the previous distinctions between day versus night and a dwelling house compared with other structures. *See Id.* Our Court of Appeals has correctly noted that the "Legislature has chosen only to keep the element of entry completely intact." *Muqqddin*, 2010-NMCA-069, ¶ 7.

**Expansion Through Case Law**

**{22}** Over time, our Court of Appeals expanded the structures that could be burglarized. Since the new definition was adopted in 1963, that court has held that the open bed of a pickup truck, *Rodriguez*, 101 N.M. at 194, 679 P.2d at 1292, the engine compartment of a vehicle, *Reynolds*, 111 N.M. at 270, 804 P.2d at 1089, a post office box, *State v. Gregory*, 117 N.M. 104, 104, 869 P.2d 292, 292 (Ct. App. 1993), a concrete pad adjoining a building, essentially described as a porch, open on three sides with a roof, *State v. Gonzales*, 2008-NMCA-146, ¶ 8, 145 N.M. 110, 194 P.3d 725, and now a gas tank and the wheel well of a vehicle are all prohibited space under Section 30-16-3.

**{23}**  Two previous Court of Appeals cases have construed Section 30-16-3 as it applies to vehicles.  To reach its holding, the *Rodriguez* court concluded "that the bed of a pickup truck, as part of a vehicle, falls within the statutorily protected area."  101 N.M. at 194, 679 P.2d at 1292.  In coming to that conclusion, the Court reasoned that the statute "expressly include[d] 'vehicles' as a prohibited space" and the "Court must give words used in a statute their ordinary meaning unless the legislature indicates a different intent."  *Id.* (internal citation omitted).

**{24}**  In *Reynolds* the Court held that the defendant was not entitled to an attempted burglary instruction for attempting to steal a starter from the engine compartment of a vehicle.  111 N.M. at 270, 804 P.2d at 1089.  Rather, the defendant's actions, reaching up into the engine compartment in an attempt to remove the starter, constituted the completed crime of burglary.  *Id.*

**{25}**  Only two Court of Appeals cases in the last forty years have found the structure entered not to be prohibited space under Section 30-16-3.  In *Bybee*, the Court held that a vending machine did not fall under the definition of "other structure" and therefore was not prohibited space.  109 N.M. at 46, 781 P.2d at 318.  *Bybee* is a well-reasoned and in-depth review of the issue presented.  The Court took care to apply settled principles of statutory construction to the issue presented and we approve of its reasoning.

**{26}**  Throughout that opinion, the *Bybee* Court made some general observations about the perils of reading too much into the literal meaning of ordinary words in a statute (e.g., "structure") without due consideration of context.  Notably, the Court relied on the rule of lenity in coming to its conclusion, stating:

> we do not believe the legislature intended the burglary statute to protect space within any thing constructed, no matter how small, absent specific language in the statute evincing intent to include such structure within the proscription of the statute.  Thus, considering Section 30-16-3(B) in light of the rule that criminal statutes are construed strictly against the state, we do not interpret the language "or other structure" to apply to soft drink vending machines located outside a dwelling house or other structure.

*Id.* at 46, 781 P.2d at 318.  As the structures that can be burglarized have been expanded over the years, the rule of lenity and the rule that criminal statutes are construed strictly against the state seems to have been overlooked.  *See Gregory*, 117 N.M. 104, 869 P.2d 292 (upholding a conviction of burglary for taking mail out of a post office box, the back of which opened to a mail sorting room not open to the public).

**{27}**  In addition, the *Bybee* court recognized that jurisprudence of other states may not be relevant to New Mexico, at least not without careful examination of the reasoning of the case and the language of the particular state's burglary statute.  The Court rejected authority from other states, finding that "those cases are distinguishable by reason of the differences in the

8

specific language of the statutes involved." *Bybee,* 109 N.M. at 46, 781 P.2d at 318. Significantly, our research indicates that no other state has a burglary statute with the exact language of Section 30-16-3, and only Louisiana has a statute that uses largely the same language. *See* La. Rev. Stat. Ann. § 14:62 (2001) ("Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, moveable or immovable, or any cemetery, with the intent to commit a felony or theft therein . . . ."). Yet even Louisiana's statute differs significantly, omitting aircraft but adding cemeteries to the list of prohibited spaces. *Id.* Other state statutes highlight even greater differences. For instance, in California one can only commit burglary of a vehicle if the vehicle is locked, Cal. Penal Code § 459 (West 1991), while Oklahoma's burglary statute expressly includes vending machines, Okla. Stat. Ann. tit. 21, § 1435 (West 1961).

**{28}**     This is not to say that burglary jurisprudence and statutes from other jurisdictions are never relevant or helpful when interpreting our own. However, when relying on such authority we must ensure that another court is not relying on language that is absent from our statute or that the language of the statute differs so greatly from ours that it serves a different purpose. *But see Gonzales*, 2008-NMCA-146 (relying on *Garrett v. State*, 578 S.E.2d 460 (Ga. 2002), to conclude that an open-air porch attached to a commercial structure can be burglarized in New Mexico, while the *Garrett* court relied specifically on language in the Georgia statute indicating that a structure or *a part of a structure* can be burglarized, an addition that is absent from New Mexico's statute.[2]).

**{29}**     The only other case since the adoption of our current burglary statute that attempted to limit its scope is *State v Foulenfont*, 119 N.M. 788, 895 P.2d 1329 (Ct. App. 1995)  In *Foulenfont*, the Court of Appeals again relied on the rule of lenity as well as the statutory-construction rule of ejusdem generis, to conclude that the term "other structure" in Section 30-16-3 was not intended to include a fence. *Id.* at 788-90, 895 P.2d at 1329-31. The rule of ejusdem generis requires, "that where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *Id.* at 791, 895 P.2d at 1332 (internal citation omitted). Accordingly, that Court "interpret[ed] the phrase 'other structure' in Section 30-16-3 to require an enclosure similar to a vehicle, watercraft, aircraft, or dwelling" and not just a fenced-in area surrounding a mobile home sales office. *Id.*

**{30}**     In *Gonzales*, this Court rejected the use of ejusdem generis when interpreting the burglary statute. 78 N.M. at 219, 430 P.2d at 377. In rejecting its use, we stated that "[w]e are impressed that the legislature intended the term 'other structure' to be construed in its literal sense and that it not be limited by the specific language preceding it." *Id.* After

---

[2] On July 1, 2012, amendments to Georgia's burglary statute went into effect that deleted the language relied on by the *Garrett* Court. *See* Ga. Code Ann. § 16-7-1 (West 2012).

9

further reflection, however, we agree with the *Foulenfont* court that the situation presented in *Gonzales* "fit within the plain meaning of the statute," so there was no need to resort to the rules of statutory construction. *Foulenfont*, 119 N.M. at 791, 895 P.2d at 1332. Accordingly, in *Gonzales*, "ejusdem generis was rejected insofar as the defendant [was] arguing that the 'other structure' had to be akin to a dwelling or place of habitation and did not include buildings used for commercial or other purposes." *Id.* Such a view would "undermine the legislative purpose" of broadening the prohibited space beyond "its common law." *Id.* While agreeing with the result in *Gonzales*, we also agree with *Foulenfont*, that ejusdem generis is an important rule of statutory construction to be used when interpreting the outer limits of prohibited space protected by the burglary statute.

**{31}** Specifically, we disavow any implication from *Gonzales* that the meaning of statutory words defining the crime of burglary (*e.g.*, "structure," "entry") should not be considered in the context of other, similarly situated words in that same statute and limited thereby. Our Legislature has said as much when it codified the ejusdem generis rule in the Uniform Statute and Rules Construction Act, which applies directly to the burglary statute. See NMSA § 12-2A-20 (A)(1)-(2) ("In considering the text of a statute or rule . . . and the context in which the statute or rule is applied, the following aids of construction may be considered in ascertaining the meaning of the text: (1) the meaning of a word or phrase may be limited by the series of words or phrases of which it is a part; and (2) the meaning of a general word or phrase following two or more specific words or phrases may be limited to the category established by the specific words or phrases."). Accordingly, from now on our courts are to utilize this statutory construction rule in conjunction with other, similar aids to focus more precisely on the true intent and meaning of burglary and its elements.

**{32}** The vehicle cases, *Rodriguez* and *Reynolds*, coupled with *Bybee* and *Foulenfont*, create somewhat of an anomaly. The term "vehicle" has been construed very broadly, to include any of its component parts, but the term "structure" has been construed narrowly so as to exclude things that would clearly fall under its everyday definition. As a result, a vending machine and a fence are not "structures," but a gas tank and a wheel well are "vehicles."

**Our Interpretation**

### Radical Departure

**{33}** In *Muqqddin*, the Court of Appeals repeated the notion that Section 30-16-3 "expresses 'a radical departure from its common law predecessor.'" *Muqqddin*, 2010-NMCA-069, ¶ 7 (*quoting Rodriguez*, 101 N.M. at 193, 679 P.2d at 1291). With respect, the Court exaggerates. At first glance, the words of the statute bear little resemblance to the common law, but that does not tell the whole story. One must remember that the new definition was the result of the combination of several statutes that were firmly rooted in the common law. Under the old statutory scheme, one could be convicted of burglary for actions that occurred in the day or the night, for actions occurring in any shop, office or

warehouse in addition to any dwelling place, with or without a breaking. *See* NMSA 1953, §§ 40-9-2 to -4, -6, -7, -10. The expanded definition present after recodification was necessary to consolidate these different crimes into a single statute covering all the different situations in which burglary could occur. The only element that remained in each of the old burglary statutes was the element of entry.[3] *See id.* Not insignificantly, this is the only element that remains unmodified by the current definition of burglary. *See* Section 30-16-3.

**{34}** In addition to the consolidation, there is no doubt that the Legislature did intend to expand the areas that could be burglarized, also known as the "prohibited space." Vehicles, watercraft, and aircraft are explicitly listed as prohibited space by the statute that were not previously the subject of burglary. *Compare* Section 30-16-3, *with* NMSA 1953, §§ 40-9-2 to -4, -6, -7, -10. However, this expansion is not without limit, nor does it represent such a radical departure from the common law that burglary's original purpose, the protection of the security of habitation, is no longer relevant. Rather, we agree with our predecessors in *Gonzales* that the new statute represents a consolidation of the elements of the crime, *see Gonzales*, 78 N.M. at 219, 430 P.2d at 377, while at the same time expanding the prohibited space that can be burglarized.

### Parts Are Not Equal To the Whole

**{35}** In each of the cases before us, the Court of Appeals relied heavily on the logical inference that entry of a part of a vehicle is the same as entry of the vehicle itself. In *Muqqddin*, the Court of Appeals stated that "[a] fuel tank—attached as it is, to a vehicle—is unquestionably *a part* of that vehicle." 2010-NMCA-069, ¶ 11. The Court then concluded that "[a]ny penetration of a vehicle's perimeter is thus a penetration of the vehicle itself." *Id.* Later, the Court of Appeals relied on the quoted language above from *Muqqddin* to reverse the district court's dismissal of the burglary charge against Defendant Dominguez-Meraz. *Dominguez-Meraz*, No. 30,382, slip op. at 1.

**{36}** In New Mexico, the idea that entry of any part of a vehicle equals an entry of that vehicle for the purposes of burglary appears to have originated in *State v. Rodriguez*, 101 N.M. 192, 679 P.2d 1290. In that case, the Court of Appeals decided that reaching into and taking something from the open bed of a pickup truck constituted burglary under Section 30-16-3. *Id.* at 193, 679 P.2d at 1291. The reasoning in that case is somewhat sparse, and is as follows:

> As [D]efendant has pointed out, this Court construes penal statutes strictly in favor of the accused. In doing so, we follow established rules of statutory construction.

---

[3] Inexplicably, NMSA 1953, Section 40-9-2 applies to any person "who shall break *or* enter." (Emphasis added.) This distinction does not appear to be of consequence for the purposes of this discussion.

> A statute should be construed in light of the purpose for which it was enacted. The general purpose of burglary statutes is to protect possessory rights with respect to structures and conveyances, and to define prohibited space.
>
> Section 30-16-3 expressly includes vehicles as a prohibited space. Since this Court must give words used in a statute their ordinary meaning unless the legislature indicates a different intent, we hold that the bed of a pickup truck, *as a part of a vehicle*, falls within the statutorily protected area.

*Id.* at 194, 679 P.2d at 1292 (emphasis added) (internal quotations and citations omitted).

**{37}** The problem with this holding is that our Legislature did not include "parts" of the enumerated items that could be burglarized. Many other jurisdictions have explicitly included "parts" of the enumerated items as prohibited space in burglary and other similar statutes. *See*, *e.g.,* 720 Ill. Comp. Stat. 5/19-1 (2010) ("A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in the Illinois Vehicle Code, railroad car, or *any part thereof*, with intent to commit therein a felony or theft." (Emphasis added)); Tex. Penal Code Ann. § 30.04 (West 2007) ("A person commits [burglary of a vehicle] if, without the effective consent of the owner, he breaks into or enters a vehicle *or any part of a vehicle* with intent to commit any felony or theft." (Emphasis added.)); Ala. Code 1975, § 13A-8-11(b) (1979); D.C. Code § 22-801(a) (1967); Okl. St. Ann. tit. 21, § 1435 (West 1965) S.D. Codified Laws § 22-1-2(49) (2005). The Legislature is free to define the prohibited space of burglary to include any part of almost anything. But absent a clearer intent to do so, we should not ourselves do that which the Legislature has declined to do. It is for the Legislature alone to define statutory criminal acts, and when it does not do so clearly, the rule of lenity compels judicial restraint. *See State v. Hicks*, 2002-NMCA-038, ¶ 11, 132 N.M. 68, 43 P.3d 1078.

**{38}** The *Rodriguez* Court focused on giving the term "vehicle" its plain meaning, but in doing so failed to consider how that might effect the meaning of the statute as a whole. As Chief Justice Montgomery stated in *State ex. rel. Helman v. Gallegos*

> courts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning. . . . While—as in this case—one part of the statute may appear absolutely clear and certain to the point of mathematical precision, lurking in another part of the enactment, or even in the same section, or in the history and background of the legislation, or in an apparent conflict between the statutory wording and the overall legislative intent, there may be one or more provisions giving rise to genuine uncertainty as to what the legislature

was trying to accomplish. In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute.

117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). Both *Rodriguez* and the present cases illustrate the point Justice Montgomery made. By giving the term "vehicle" its plain meaning, the meaning of the statute as a whole became far from customary. For example, if an ordinary person were told to "enter" a pickup, he or she would find a seat in the passenger compartment, not lay down in the bed of the pickup. The same could be said for the gas tank and wheel wells in the instant case. Accordingly, the "beguiling simplicity" of the plain-meaning reasoning in *Rodriguez* causes discomfort, both in its result and in its analysis, relying as it does on language ("a part of a vehicle") missing from our statute. Without clear text, the Legislature has given no indication that it intended an entry into a part of the enumerated structures in Section 30-16-3 to be equal to an entry of that structure itself. Accordingly, we reject any further use of *Rodriguez* as persuasive authority.

### Burglary's Modern Day Purpose

**{39}** In addition, we believe that the original common-law purpose of burglary, the protection of the security of habitation or a similar space, is still relevant when construing our modern burglary statute. As such, we reject the State's argument that "today burglary is a property crime," at least to the extent the argument implies that it is the sole or primary purpose of burglary. Larceny or even just damage to property is not necessary to commit burglary. *See State v. McAfee*, 78 N.M. 108, 111, 428 P.2d 647, 650 (1967) ("Since stealing is a necessary element of larceny but is not a necessary element of burglary, larceny is not necessarily involved in a burglary."); *State v. Ortiz*, 92 N.M. 166, 168, 584 P.2d 1306, 1308 (Ct. App. 1978) ("New Mexico no longer defines burglary in terms of a 'breaking.'"). Therefore, burglary has a greater purpose than merely protecting property.

**{40}** Our Court of Appeals has often stated that the purpose of our burglary statute is "to protect possessory rights with respect to structures and conveyances, and to define prohibited space." *Rodriguez*, 101 N.M. at 194, 679 P.2d at 1292 (*citing State v. Hankins*, 376 So. 2d 285 (Fla. App. 1979) and *People v. Davis*, 369 N.E.2d 1376 (Ill. App. Ct. 1976) (internal quotation marks omitted)). The possessory rights[4] that burglary was designed to protect, however, go beyond the mere right to physical possession of an object. The law was not designed solely to deter trespass and theft, as those are prohibited by other laws. *See People v. Hall*, 100 Cal. Rptr. 2d 279, 286 (Ct. App. 2000).

**{41}** Chief among the possessory interests that burglary is designed to protect is the right

---

[4] Ironically, the Florida case, *Hankins*, 376 So.2d 285, upon which the *Rodriguez* Court relied for this proposition, rejected the idea that stealing hubcaps from a vehicle was burglary.

to exclude.  Black's Law Dictionary defines a possessory interest as "[t]he present right to control property, including the right to exclude others . . . ."  Black's Law Dictionary 1284 (9th ed. 2009).  This right to exclude has been described as "perhaps the most fundamental of all property interests."  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005).  The gravamen of the offense of burglary has always been the unauthorized entry with felonious intent.  *See People v. Lamica*, 79 Cal. Rptr. 491, 494 (Ct. App. 1969); *People v. Fuentes*, 258 P.3d 320, 325 (Colo. App. 2011); *Hankins*, 376 So.2d at 286; *State v. DeWitt*, 101 P.3d 277, 284 (Mont. 2004).  It is this entry or invasion that is the harm created by the act of burglary and that the statute punishes, as "[t]he crime of burglary is complete when there is an unauthorized entry with the requisite intent."  *State v. Martinez*, 98 N.M. 27, 30, 644 P.2d 541, 544 (Ct. App. 1982).  Therefore, the right to exclude others is the possessory interest with which burglary is primarily concerned.

**{42}**    The right to exclude also implies some notion of a privacy interest.  *See Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978) ("[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude.").  It is the invasion of privacy and the victim's feeling of being personally violated that is the harm caused by the modern burglar, and the evil that our society is attempting to deter through modern burglary statutes.  *See State v. Martinez*, 832 P.2d 331, 336 (Idaho Ct. App. 1992) (Burglar "was not sentenced for misdemeanor injury to property, but for the more serious invasion of privacy and security represented by the crime of burglary."); *Arabie v. State*, 699 P.2d 890, 894 (Alaska Ct. App. 1985) (A lawful entry "imposes no . . . invasion of privacy on the property holder so as to render the culprit guilty of burglary."); *State v. Tixier*, 89 N.M. 297, 299, 551 P.2d 987, 989 (Ct. App. 1976) ("Burglary is an offense against the security of the building.").

**{43}**    The privacy interest that our modern burglary statute protects is related to, though broader than, the security of habitation.  Both aim to protect against the feeling of violation and vulnerability that occurs when a burglar invades one's personal space.  This is lacking in the cases before us.  One does not have the same feeling of personal violation when gas has been siphoned from our vehicle or when someone steals a wheel as we do when an intruder has been in our home or office rifling through our most intimate and treasured belongings or even when an intruder has been exploring the contents of a glove compartment or the trunk of a car.

### Enclosure

**{44}**    Moreover, we agree with *Foulenfont* that in order for an area to be considered prohibited space under Section 30-16-3, it must have some sort of enclosure.  *Foulenfont*, 119 N.M. at 791, 895 P.3d at 1332.  Each of the enumerated structures in Section 30-16-3 either inherently has, or has been interpreted to require, some sort of enclosure.  Accordingly, we believe it is this enclosed space that the Legislature intended to protect.

**{45}**    Prohibited space is private space.  It is the nature of the enclosure that creates the

14

expectation of privacy. Enclosure puts the public on notice. As the California Court of Appeals stated, "[t]he proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions." *People v. Nible*, 247 Cal. Rptr. 396, 399 (Ct. App. 1988), *holding modified by People v. Valencia*, 46 P.3d 920, 924 (Cal. 2002).

**{46}**     Accordingly, we disagree with the notion that any penetration of a vehicle's perimeter constitutes a penetration of the vehicle itself. *Muqqddin*, 2010-NMCA-069, ¶ 11. This is simply an unworkable standard. We are aware that other jurisdictions allow a burglary charge to stand whenever a defendant "breaks the close" of a structure, meaning the defendant crosses some imaginary plane created by some portion of a structure that is by its nature open to the elements. *See Richardson v. State*, 888 S.W.2d 822, 824 (Tex. Crim. App. 1994).

**{47}**     We find this line of reasoning unpersuasive for multiple reasons, although we note again that the Legislature is free to define burglary as it wishes. Aside from lack of notice, the concept of an imaginary plane is ambiguous, creating more questions than it answers and subject to prosecutorial abuse. For instance, consider a flat-bed pickup truck. Would such an imaginary plane run from the roof of the cab of the truck to the back bumper, such that merely waving one's hand over the flat-bed breaks the close? Would the close of a house extend from the eaves to the foundation, such that stealing a shutter, obviously attached to the outside requiring no entry of the house itself, becomes a burglary? Exactly what makes up the perimeter of a vehicle? Is it just the body panels or does it include any parts that protrude beyond those panels? It is for the Legislature, not the judiciary, to answer such questions if it wishes. Without such legislative guidance, the courts should not be placed in the position of inventing fictions to expand the definition of criminal activity.

**{48}**     To be clear, the above reasoning does not apply to such things as an open window. A window, by its nature, creates an opening in an enclosure, as opposed to a wheel well which is an open structure. As such, a burglary can be committed through an open window. *See, e.g.*, *State v. Peck*, 150 N.W.2d 725 (S.D. 1967).

### Our Courts Previously Cautioned Against Such Judicial Expansion

**{49}**     This is not the first time our courts have cautioned against the continued expansion of the crime of burglary without legislative license. As far back as 1987 one member of the Court of Appeals warned against it. In *State v. Sanchez*, Judge Apodaca wrote a special concurrence to express his concerns that "there is a risk involved in stepping too far afield," and he expressed concern that courts "may be approaching the limit of our [burglary] statute's application." 105 N.M. 619, 622, 735 P.2d 536, 539 (Ct. App. 1987). *Sanchez* also involved two consolidated cases in which the accused burglars entered buildings open to the public but then passed into other areas of the building that were not open before stealing various items. *Id.* at 619-20, 735 P.2d at 536-37. While Judge Apodaca joined in affirming the convictions, he was concerned that we take care not to "blur those often fine-line

15

junctures of criminal elements, where one crime ends and another begins." *Id.* at 623, 735 P.2d at 540. Specifically, he was concerned with "the potential problems with a broader definition of burglary if the distinction between burglary and other crimes . . . is blurred." *Id.* at 622, 735 P.2d at 539.

### NMSA 1978, Section 30-16D-5 (2009)

**{50}** The present cases show how easy it is to blur those "fine-line junctures" with an ever broadening judicial interpretation of the crime of burglary. Significantly, the criminal acts charged as burglary in these two cases are already punished under our statutes as other, lesser crimes. The statutory misdemeanor of Injuring or Tampering with a Motor Vehicle, NMSA 1978, Section 30-16D-5 (2009), along with our general larceny statute, NMSA 1978, Section 30-16-1 (2006), appears to cover the present situations. Section 30-16D-5(A)(5) makes it a misdemeanor to engage in the purposeful "draining or starting the drainage of any radiator, oil tank or *gas tank* upon a motor vehicle without the permission of the owner." Section 30-16D-5(A)(5) (emphasis added). Similarly, Section 30-16D-5(A)(7) makes the malicious "tightening or loosening [of] any bracket, bolt, wire, *nut*, screw or other fastening on a motor vehicle" a misdemeanor as well. Section 30-16-5(A)(7) (emphasis added). Obviously, stealing tires is punished as larceny; the question is whether it should be both larceny and burglary, as the state suggests.

**{51}** By making the broad, sweeping statement that "[a]ny penetration of a vehicle's perimeter is thus a penetration of the vehicle itself," thereby constituting burglary, the Court of Appeals would essentially supplant various parts of Section 30-16D-5. *Muqqddin*, 2010-NMCA-069, ¶ 11. It would be almost impossible to drain a gas tank or radiator or remove a bolt or nut without penetrating the vehicle's perimeter in some fashion. Accordingly, such actions would always be punished as burglary, rather than, as the Legislature specifically directed, the misdemeanor of Tampering with a Motor Vehicle.

**{52}** It is for the Legislature, not the courts and not the district attorney, to strike the delicate balance between those grave crimes punishable as felonies and those lesser infractions punishable as only misdemeanors. That balance requires value judgments that should be made by the people's representatives, not judicial officers, under a constitutional system of separation of powers.

**{53}** We recognize that a person draining a gas tank or removing a bolt must also have the requisite intent to commit a felony or theft before a burglary conviction is appropriate. But, intent can rarely be proven directly and is most often proven by circumstantial evidence. *State v. Motes*, 118 N.M. 727, 729, 885 P.2d 648, 650 (1994) (quoted authority omitted). Say for instance, Defendant Muqqddin did not intend to keep the gasoline, but only drain it. Since he had no intent to commit a theft, his actions should not support a burglary conviction. But, as the Court of Appeals stated in *State v. Wilkerson*, "[a] jury could reasonably infer from the defendant's unauthorized presence in the vehicle that he had the necessary intent to commit a felony or theft therein." 83 N.M. 770, 771, 497 P.2d 981, 982

16

(Ct. App. 1972).  Depending on the evidence, then, a jury might infer from the accused's presence under a vehicle that the accused had the requisite intent to commit a felony or a theft.  Accordingly, the action explicitly described by the Legislature in Section 30-16D-5(A)(5) as a misdemeanor—draining a gas tank—might nearly always be prosecuted as a felony, contrary to legislative direction.

**{54}**     The lesson from cases such as those presented here, along the outer fringes of what the Legislature may or may not consider as burglary, is that trial courts and trial counsel must consider more than just the words of a statute.  Words are the beginning, not the end; they serve as portals into the *thoughts* behind the words of a criminal statute.  Where, as here, those thoughts are revealed in another, lesser statute, that becomes a fairly reliable indicator of legislative intent, both as to the specific crime and, more importantly, the gravity of the offense.

**{55}**     Finally, the present cases show the absurd results that flow from such an expansive reading of the burglary statute.  A slight modification of the facts of Defendant Muqqddin's case makes this clear.  If Defendant Muqqddin had poked a hole in the gas tank and instead of collecting the gas, had let the gas run all over the ground creating a fire hazard, he would have been guilty of a misdemeanor under the Tampering statute.  But, because Defendant Muqqddin captured the gas in an attempt to take it rather then letting it spill onto the ground, thereby mitigating the fire hazard, he becomes subject to a felony according to the State's interpretation.  Even more so, if the thief were to puncture the gas tank only to find it bone dry, he should be guilty of attempted Tampering or criminal damage to property.  But under the expansive view espoused by the prosecutor, the hapless thief would still be subject to a felony, regardless of results, if he "entered" with felonious intent.

**{56}**     In Defendant Dominguez-Meraz's case, the State argued that he "entered" the wheel well for the purposes of the burglary statute.  What if he chose to steal the wheels off of a racing vehicle or some other car with protruding axles?  Without a wheel well to "enter," he could only be charged with larceny, while Dominguez-Meraz stands threatened with both larceny and burglary, all due to the happenstance of the wheel well.  We are loathe to assume that our Legislature intended such arbitrary distinctions, not at least without more well-defined direction in the language of the statute.

**{57}**     It would be helpful if our Legislature would address some of these distinctions, as well as the effects of emerging technology upon the meaning of what constitutes an "unauthorized entry."  This is especially true when the entry is accomplished by the use of an instrument.  *See Davis*, 958 P.2d at 1087-88.  As the California Supreme Court stated, "[i]t is important to establish reasonable limits as to what constitutes an entry by means of an instrument for purposes of the burglary statute.  Otherwise the scope of the burglary statute could be expanded to absurd proportions."  *Id.* at 1087.

**Rule of Lenity**

17

**{58}** Finally, even if the Tampering statute did not exist, the rule of lenity, as correctly applied in the *Bybee* and *Foulenfont* opinions, teaches that burglary does not fit the criminal acts described in these two prosecutions. The rule of lenity requires that "ambiguity in criminal statutes [be] strictly construed against the State." *Hicks*, 2002-NMCA-038, ¶ 11. "[A]ny doubts about the construction of penal statutes must be resolved in favor of lenity." *Id.* (internal quotation and citation omitted). As we have noted above, the situations presented in these cases raise serious doubts as to whether the Legislature intended to punish each defendant's actions as burglary. Under the rule of lenity, that ambiguity must be resolved in favor of Defendants. The Legislature is always free to address conduct like this if it wishes to expand the scope of the burglary statute, as it has done at various times throughout our history.

**Guidance to Lower Courts**

**{59}** When deciding whether or not a burglary charge is appropriate, courts and District Attorneys must consider whether or not this is the type of entry the Legislature intended Section 30-16-3 to deter. Defining exactly what entries were intended to be prohibited by Section 30-16-3 remains elusive. There are countless different scenarios and fact-patterns that could arise such that any precise definition from this Court would undoubtedly include entries not intended by the Legislature and vice-versa. However, when considering the question, there are some guiding principles to remember.

**{60}** First and foremost, what is being punished as a felony under Section 30-16-3 is a harmful entry. Again, the entry is the harm sought to be prevented, as the crime is complete upon entry with the requisite intent. As a felony, burglary is a serious offense with serious consequences. *See* Section 30-16-3 (defining burglary as either a third or fourth degree felony). A burglary charge is no petty crime. *See* NMSA 1978, § 31-18-15(A)(9) to (10) (2007) (defining the basic sentence for a third and fourth degree felony as three years imprisonment and eighteen months imprisonment respectively).

**{61}** The punishment for burglary of a vehicle is the same as that for burglary of a commercial building. We believe that this demonstrates a legislative intent to limit the areas of a vehicle that are prohibited space under Section 30-16-3. The entries in these two cases would be punished just the same as any burglary of a store or other commercial space such as a warehouse, or unauthorized entry into the passenger space of a vehicle, watercraft or airplane, all places where things are stored and personal items can be kept private. They are all fourth-degree felonies. *See* Section 30-16-3(B). Yet the harm from the entry in Defendants' cases, as opposed to the ensuing theft, cannot be compared. Similar disparities in future cases should be kept in mind, because we do not assume lightly that the Legislature intends to act in an irrational manner.

**{62}** Prosecutors and courts must be cognizant of the disparity in potential penalties that can stem from a burglary charge due to its unique place in our jurisprudence. As noted above, even though the completed crime of burglary is but a step taken toward another

crime, it never merges with that completed crime. As a result, a burglar can be convicted and sentenced for the burglary, a felony, as well as the subsequently completed or attempted crime. This can easily lead to a punishment that may not fit the actions of the accused.

{63} Defendant Muqqddin, for instance, should have been prosecuted for Tampering with a Motor Vehicle under Section 30-16D-5(A)(5), a misdemeanor, and attempted petty larceny of the gasoline under Section 30-16-1(B), a petty misdemeanor. This would carry a possible sentence of one and a half years of incarceration, *see* NMSA 1978, § 30-1-6 (1963), already a steep punishment for the crime of attempting to steal a relatively small amount of gasoline. But, when one adds the felony of burglary, his potential penalty doubles to three years. Along a similar line, Defendant Dominguez-Meraz is surely subject to prosecution for larceny of the tires, potentially a felony, and attempted larceny for those he could not steal. But under the Court of Appeals' reasoning, he would be subject to another fourth-degree felony merely by virtue of where he was positioned when he attempted to remove the tires. If the Legislature wants to expand burglary, blur the lines between crimes, and create overlaps, then it should be left to the Legislature to do so. But in the absence of such legislative action, trial courts and prosecutors should exercise caution in the use of *judicial* power to act as surrogates for that which the Legislature has not done.

**CONCLUSION**

{64} We reverse the Court of Appeals and vacate Defendant Muqqddin's burglary conviction and affirm the district court's dismissal of the burglary charge against Defendant Dominguez-Meraz.

{65} **IT IS SO ORDERED**.

_____

**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

19

**Topic Index for *State v. Office of the Public Defender*, Nos. 32,430/32,632**

**APPEAL AND ERROR**
Standard of Review

**CRIMINAL LAW**
Burglary

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction